Argued May 26, modified June 29, 1920.

## MARTIN v. GAULD CO.*

(190 Pac. 717.)

**Master and Servant—Evidence—Contract—Avoidance of Written Resignation—Pleading—Confession and Avoidance.**

1. In an employee's action for wrongful discharge, prior to termination of contract, evidence that employee's written resignation and acceptance was at request of the employer and merely for purpose of appearances, was inadmissible, in absence of a plea in confession and avoidance.

**Master and Servant—Resignation—Cannot Recover for Wrongful Discharge—Contract.**

2. An employee, tendering his written resignation, which is accepted by the employer, cannot recover for wrongful discharge prior to termination of contract, though the resignation was at the employer's request and was made merely for the sake of appearances.

**Master and Servant—Action—Variance.**

3. In an action for wrongful discharge, variance between allegation that plaintiff was employed at a fixed salary per month and 10 per cent profit during the year, after deduction of an amount equal to 10 per cent of the capital stock, and proof that he was employed at such a salary, and that it was subsequently agreed that he was to receive the 10 per cent of the profits, held not fatal, under Section 97, L. O. L.

**Master and Servant—"Profits"—Construction—Question for Court.**

4. In employee's action for wrongful discharge in violation of contract entitling him to certain per cent of profits, where there was no understanding between the parties as to what should constitute profits, the interpretation of the contract with respect to the meaning of the term "profits" held for the court.

*On right to service reward or bonus, of servant discharged without cause before stipulated term of service, see note in 44 L. R. A. (N. S.) 1214.    REPORTER.

Appeal and Error—Judgment—Good as One Cause of Action not Reversed—Verdict.

5. In action on two counts, appellate court, in holding judgment correct as to first cause of action and incorrect as to other cause of action, will not reverse judgment, though verdict of jury was for a single sum, where the amount to which plaintiff was entitled under the first cause of action could be ascertained from the record, and the appellate court in such case will affirm judgment as to first cause of action and reverse it as to second cause of action.

From Multnomah: GEORGE W. STAPLETON, Judge.

Department 1.

This is an action wherein plaintiff seeks to recover damages for breach of a contract of employment. The complaint sets up two causes of action. In the first it is alleged that in February, 1916, defendant employed plaintiff as its manager and agreed to pay him $250 per month, and in addition thereto 10 per centum of the profits made by defendant during the year 1916, after deducting from such profits 10 per centum of the capital stock of defendant. It is alleged that plaintiff fully performed his obligations under the agreement; that the business during that year earned a profit of $42,000, and that after deducting 10 per centum of the capital stock, $15,000, there remained a profit of $27,000, of which plaintiff is entitled to 10 per cent, or $2,700; that the fixed salary of $250 per month has been paid, but that defendant refuses to pay the agreed share of the profits to plaintiff, and he therefore asks judgment thereon for $2,700.

The second cause of action avers that in February of 1917, defendant employed plaintiff as its manager, agreeing to pay him a fixed salary of $350 per month, for the full year, and in addition thereto agreed that, if defendant's stock of merchandise should be reduced to a value not exceeding $170,000, and accounts

and bills receivable reduced to and maintained at a sum not exceeding $120,000, and defendant's indebtedness to the bank reduced to and maintained at a sum not exceeding $85,000, then and in that event defendant would pay to plaintiff as additional compensation 10 per centum of the profits received in money during said term of employment. It is then alleged that on August 1, 1917, defendant wrongfully discharged plaintiff, without cause, thereby preventing him from bringing the business to the agreed basis, and earning the 10 per centum of profits provided for in the contract, as he otherwise would have done. For this cause he prays for damages in the sum of $5,000.

Defendant's answer to the first cause of action is a denial. As to the second cause of action, defendant alleges that on August 1, 1917, without having complied with any of the conditions to entitle him to compensation under the profit sharing agreement, he voluntarily abandoned the employment and abandoned all efforts to comply with the conditions and earn the additional compensation. It is further alleged that on August 1, 1917, defendant's stock of merchandise amounted to $208,918.68, its bills and accounts receivable amounted to $152,616.26, and its indebtedness to the bank amounted to $95,000. It is also averred that his salary of $350, per month had been paid in full to August 1.

Plaintiff's reply consists entirely of denials. The cause was tried to a jury, resulting in a verdict and judgment in favor of plaintiff in the sum of $4,450, from which defendant appeals.

AFFIRMED IN PART. REVERSED IN PART.

For appellant there was a brief over the name of *Messrs. Flegel, Reynolds & Flegel,* with an oral argument by *Mr. John W. Reynolds.*

For respondent there was a brief over the name of *Messrs. Malarkey, Seabrook & Dibble,* with oral arguments by *Mr. E. B. Seabrook* and *Mr. A. M. Dibble.*

BENSON, J.—In considering this case, we shall adopt the order pursued by counsel, and in the first instance direct our attention to the second cause of action. This cause must stand or fall upon the question as to whether plaintiff resigned his position or was wrongfully discharged. Plaintiff testifies that on the evening of August 1, Mr. Flegel, as a managing director of the defendant corporation, said to him, "Well, I tell you, Martin, Mr. Alvord and I have decided that we should change the management of the company, you had better retire." To which the plaintiff replied, "All right." And that thereafter some discussion occurred looking to a purchase, by him, of the business, and that on the next morning he wrote and mailed this letter:

"The Gauld Company,
"Corner 12th and Everett St.
"Portland, Or., Aug. 2, 1917.
"Mr. A. F. Flegel,
"Dear Sir: The financial consideration is too heavy for me to assume at this time. I herewith hand you my resignation as Manager of the Company. I will be pleased to have you so regulate matters so I may get away as soon as possible. However will gladly stay as long as you think necessary to show my successor whatever is required.
"Wishing my successor, yourself and the Company the best of success, I am,
"Respectfully,
"V. F. MARTIN."

In reply to which he received the following:

"Flegel, Reynolds & Flegel,
"Attorneys at Law,
"Portland, Oregon, Aug. 3, 1917.
"Mr. V. F. Martin,
"c/o The Gauld Company,
"69 N. 12th St., City.—

"My dear Martin: I have your letter of Aug. 2nd, with the information that the financial burden was too heavy for you to assume in connection with the purchase of the Gauld Company business, and sincerely regret your inability to make your financial arrangements, for the reason that I was determined to give you every preference, both in regard to price and to terms, but I was seriously afraid that the investment was, as you have found, too large.

"The board of directors have determined to accept your resignation, to take effect immediately, and you are hereby authorized to draw a check for your August salary, and turn the business over to Mr. Creasey, assistant manager.

"Yours very truly,
"BOARD OF DIRECTORS OF THE GAULD COMPANY,
"By A. F. FLEGEL."

Plaintiff contends that this correspondence does not state the actual facts at all; that in truth he was peremptorily discharged, and that the foregoing correspondence was indulged in merely "to save his face," or, as he explains,

"I thought that was the most graceful way. I was discharged, and I thought that was the most graceful way out of it. It is usual, when a man is discharged, to ask for his resignation; that is the most graceful way, of course."

The letter of resignation, written and mailed by the plaintiff, and the written reply of defendant, accepting the same, taken together, constitute a contract, which, upon its face, is valid and binding upon

the parties. The plaintiff admits the execution of these writings, which are perfectly clear and free from ambiguity, but insists it was a compulsory resignation.

1, 2. In other words, although his reply contains no plea other than a denial, he offers evidence which admits the execution of a written contract and seeks to avoid its legal effect. It is elementary that, in the absence of a proper pleading, such evidence in avoidance cannot be considered. But, even if there were a proper plea in confession and avoidance, we think the evidence submitted totally fails to establish any ground, for escaping the legal effect of the written resignation and acceptance. While there is some conflict in the authorities upon this subject, we think the better reasoning supports the conclusion reached in *Wharton* v. *Christie*, 53 N. J. Law, 607 (23 Atl. 258), and *Merrill* v. *Wakefield Rattan Co.*, 1 App. Div. 118 (37 N. Y. Supp. 64). The motion for a judgment of nonsuit should have been allowed.

3. Regarding the first cause of action, defendant's first contention is that there is a fatal variance between the contract as alleged in the complaint and that proven. The complaint avers that in the month of February, 1916, plaintiff was employed as manager of defendant's business, at a fixed salary of $250 per month, and was to receive, at the end of the year, ten per cent of the profits earned during the year, after deducting therefrom an amount equal to ten per cent of the capital stock. The evidence of the plaintiff is to. the effect that in February he was employed as manager at a salary of $250 per month, and that in March it was agreed that he should have, in addition to such salary, ten per cent of the profits earned during the year, after deducting ten per cent of the capital stock. Upon the subject of variance

between allegations and proofs, Section 97, L. O. L.; says:

"No variance between the allegation in a pleading and the 'proof shall be deemed material, unless it have actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits."

In the present case, there is no contention upon the part of the defendant, that there was any different agreement as to profit sharing, and a difference of a few days in time between making the original contract and the subsequent modification cannot have misled defendant in making its defense, which was based upon the contention that there was never any agreement of any sort upon that subject during that year.

4. It is next urged that the court erred in refusing defendant's request for the following instruction to the jury:

"If you find from the evidence that defendant contracted with plaintiff to pay plaintiff, in addition to his salary, ten per cent of the profits for 1916, after deducting ten per cent on the capital stock, then it is for you to determine from the evidence whether profits were made in the year 1916, and if so, how much. It is for you to determine whether profits, within the meaning of such contract, included an increase in the aggregate amount or value of merchandise and the amount of uncollected bills, or whether, on the other hand, such profits comprised only gains realized in money, and available for distribution."

The vice of this instruction lies in the fact that it leaves the question of what constitutes profits to be determined by the jury. There is no evidence in the record tending to show that, if there was any profit-sharing agreement for the year 1916, there was any

96 Or.—41

understanding between the parties as to what should
be the meaning of the term, and therefore the inter-
pretation of the contract was exclusively a matter for
the court. Upon this subject the court advised the
jury as follows:

"On the proposition as to whether or not profits
were earned during the year, the court will instruct
you that profits in the ordinary business acceptation
of the term, means the earning or increased value of
the assets of the business over and above the cost
price of the goods that have been handled during the
period, plus the cost and expenses of operation or
overhead charges, as it is called, and plus the cost
of handling the financial operations of the business.
So that, if in that connection you find that at the
expiration of the period covered in the first cause of
action, that there was disclosed in the annual state-
ment or annual auditor's report that there was an
accumulation or addition to the value of the assets
of the business over that at the beginning of the
year, in excess of ten per cent of the capital stock
of the corporation, then I instruct you that that addi-
tional amount will be in the ordinary meaning of the
term profits, whether it be in cash, notes and ac-
counts, or merchandise, or any other assets of the
corporation. But I will also instruct you that it
must be something beyond the mere natural advance
in the price of the goods upon the shelves caused by
a changed condition in the market. It must be an
accumulation of earnings, an addition to the value of
the assets of the corporation, over and above the
cost of the goods and the costs and expenses of the
operations of the business during the period, that
comes about as the result of handling the operations
of the business through the methods of industry and
industrial enterprise applied to the general manage-
ment of the business. The mere increase of the
value of the goods upon the shelves over and above
what they were at the beginning of the year should
not be considered as profits. That is only an ele-
ment which might enter into the question of profits,

but all earnings and additions which are merely attributable to that cause cannot be considered profits, so as to enable the plaintiff to claim compensation upon it in excess of the ten per cent of the capital stock of the corporation.''

This instruction is fully as favorable as the defendant could ask.

5. Defendant further insists that, if this court shall find it necessary to reverse the judgment as to the second cause of action, it must necessarily reverse it as to the first cause of action also, for the reason that the verdict of the jury is for a single sum, and that the amount allowed upon each of the two counts cannot be segregated. The verdict reads thus:

''We, the jury impaneled and sworn to try the above-entitled cause, find our verdict in favor of the plaintiff, and fix and determine the amount to be recovered by plaintiff from defendant at the sum of $4,450.''

An examination of the record discloses that the complaint alleges, and the evidence of the plaintiff tends to prove, that upon the first cause of action, ten per cent of the profits, computed after deducting from the total profits ten per cent of the capital stock, amounts to $2,700. Upon the second cause of action the court withdrew the question of profit-sharing from the consideration of the jury, submitting to them only the question of damages incurred by the loss of salary for the remainder of the term after discharge, which the jury evidently computed at the fixed sum of $350 per month for the remaining five months of the year, amounting to $1,750. These two sums aggregate the exact sum specified in the verdict, and leave us without any doubt as to the fact that the jury intended to allow plaintiff the $2,700 demanded by him in the first count of his com-

plaint. It is true that at one time the plaintiff testified that his August salary had not been paid, and later, upon cross-examination, admitted that during the month of July he had overdrawn his account to an extent which would fully pay his August salary, leaving but four months' salary still unpaid; but 'an examination clearly shows that this evidence was overlooked or disregarded by the jury. Eliminating, therefore, all that the jury could possibly have awarded plaintiff upon the second count, there remains the sum of $2,700, the exact amount of plaintiff's claim upon the first count, and it is easily and safely to be segregated from the lump sum named in the verdict.

The cases cited by defendant in support cf its contention upon this point, all base their conclusion upon the fact that the state of the record is such as to render a severing of the two elements of the verdict impossible, except in the cause of *Little Rock & Ft. Smith R. R. Co.* v. *Perry,* 37 Ark. 164, in which there is nothing to indicate the amount of the verdict, or what difficulties were presented in the interpretation of the verdict. All that is said regarding the matter is:

"As to the second count in the complaint, no error is claimed, but the judgment, being *solido,* must be reversed."

We conclude that, as to the first cause of action, the judgment should be affirmed. As to the second cause of action, the case will be remanded, with directions to enter a judgment of nonsuit.

AFFIRMED IN PART. REVERSED IN PART.

McBRIDE, C. J., and HARRIS and BURNETT, JJ., concur.