Argued June 7, affirmed September 28, petition for
rehearing denied October 25, 1972

## PACIFIC FORM CORPORATION, *Appellant & Cross-Respondent, v.* BURGSTAHLER, *Respondent & Cross-Appellant.*

501 P2d 308

*Lloyd W. Weisensee,* Portland, argued the cause

for appellant.

*James B. O'Hanlon,* Portland, argued the cause for respondent.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, HOWELL and BRYSON, Justices.

HOWELL, J.

Plaintiff filed this action to recover damages resulting from defendant's negligence in failing to discover a defect in certain construction plans. The action was tried before the court without a jury. The court entered a judgment for defendant, and both parties appeal.

Plaintiff is in the business of designing and selling steel forms and shoring used in the construction industry. In August or September of 1968, plaintiff's vice-president contacted W. F. Maxwell Company in California in regard to providing a shoring system for a viaduct Maxwell had contracted to build. Maxwell invited plaintiff to submit a design and a bid for these supports which would be used to hold up the viaduct during construction.

On November 29, 1968, plaintiff sent a sales design to Maxwell and submitted a bid. On December 12, 1968, Maxwell submitted a purchase order which provided that plaintiff was to supply a certain quantity of shoring towers for the lump sum of $429,-750. Acceptance of the entire shoring system by Maxwell was conditioned upon plaintiff's testing a prototype of the towers which was required to support a

vertical load of 400,000 pounds at a height of 110 feet. Plaintiff was also required to have the final plans approved and signed by a structural engineer registered in the state of California.

The purchase order also contained an option whereby Maxwell could acquire an additional quantity of towers for the lump sum of $47,750, plus tax.

After receiving the purchase order on December 12, 1968, plaintiff proceeded with the final design and shop drawings. A steel fabricator was contacted to build a prototype for testing purposes.

On January 7, 1969, plaintiff contacted defendant, a consulting engineer, to review the final plans to determine if they were suitable for the purpose intended. On either January 15 or January 16, 1969, defendant recommended certain changes in the design of the shoring system. The exact date is not clear from the evidence, but sometime between the 15th and 20th of January, 1969, plaintiff incorporated the recommended changes into the final plans and returned them to defendant for approval.

In the meantime, the prototype had been built. On January 16 and 17, 1969, the prototype was tested and successfully withstood the required weight.

There is a conflict in the testimony whether defendant approved and signed the final plans before or after the prototype had been tested. However, for the purpose of our holding it is not important.

After the design had been approved by defendant and the prototype tested, plaintiff had the towers fabricated and shipped to the construction site in California.

Approximately June 1, 1969, an employee of plaintiff discovered that the design had a defect in it. Plaintiff contacted defendant, who then agreed that the design, as approved, was inadequate to support 400,000 pounds of vertical weight as required by the purchase order.

To correct this defect, it was necessary for plaintiff to have additional bracing manufactured and shipped to the construction site at a cost of $35,553. Also, another prototype was constructed and tested by plaintiff at a cost of $5,275.96.

In October 1969 Maxwell exercised its option to purchase additional towers. These towers were fabricated with the additional bracing inserted prior to being sent to the construction site. The extra bracing for these towers cost $4,195.89.

In its amended complaint, plaintiff alleged that defendant negligently failed to discover the defect in the design of the shoring system and that as a result plaintiff incurred expenses of $45,024.85. This amount represents $39,748.89 plaintiff was required to spend for the additional bracing and $5,275.96, the cost of the construction and testing of the second prototype.

Defendant's answer contained a general denial and an affirmative defense that plaintiff was contributorily negligent in failing to discover the defect in the design of the shoring system and in failing to properly conduct the tests to discover any possible defects.

Plaintiff filed a motion to strike and a demurrer to this affirmative defense, both of which the trial court overruled.

After hearing the evidence, the court found "that

both parties were negligent as alleged and that such negligence was the proximate cause of any damage sustained by plaintiff," and entered a judgment against plaintiff. Both parties appeal.

Plaintiff contends that the trial court erred in refusing to strike the affirmative defense of contributory negligence and overruling the demurrer to the same. Defendant contends that the trial court erred in finding that its conduct was a cause of plaintiff's injury.

Assuming that plaintiff is correct in its argument that the trial court erred in overruling the demurrer and refusing to strike the affirmative defense of contributory negligence, plaintiff is, nevertheless, not entitled to recover from defendant.

■ ■ Plaintiff's action is properly characterized as one for malpractice arising out of defendant's failure to use due care to discover the defect in the plans of the shoring system. Malpractice actions are based on negligence. *Ritter v. Sivils,* 206 Or 410, 293 P2d 211 (1956); see, *Dowell v. Mossberg,* 226 Or 173, 355 P2d 624, 359 P2d 541 (1961). Therefore, as in all other actions based on negligence, plaintiff is required to establish that not only did the defendant breach a duty owed to the plaintiff but that such conduct was a cause of plaintiff's injury. *Ritter v. Sivils,* supra at 413. Plaintiff has failed to establish that defendant's negligence was a cause of any damage sustained.

Plaintiff alleged in its amended complaint that, in reliance upon defendant's certification, the shoring towers were fabricated and sent to California. It is plaintiff's position that had defendant discovered the defect in the plans prior to the towers being fabricated and shipped, plaintiff would not have incurred the

cost for additional bracing. This argument is not persuasive.

■ Prior to any contact with defendant the plaintiff, under the terms of the purchase order dated December 12, 1968, was required to design, build and ship to the construction site in California a shoring tower capable of supporting 400,000 pounds of vertical weight for a fixed price.[1]

■ While defendant was negligent in failing to discover the defect in the design prior to the towers being fabricated and shipped to California, we fail to see how plaintiff was injured by defendant's conduct. Plaintiff was required to produce a tower that satisfied the contract specifications at whatever cost was necessary. The mere fact that the full cost of producing these towers was not discovered until after the towers were fabricated and sent to the construction site is of no consequence. Had defendant discovered this defect prior to the fabrication and shipping of the towers, plaintiff still would have been obligated to provide the additional bracing.

---

[1] The trial court found that plaintiff did not rely upon defendant's certification in entering into the contract with Maxwell. Plaintiff contends that the trial court erred in requiring plaintiff to show that it relied upon defendant's certification and in finding, as a matter of fact, that plaintiff did not rely on defendant's certification in entering into the contract with Maxwell. We fail to see how plaintiff was prejudiced in any way by the trial court's action.

Plaintiff's amended complaint alleges that in reliance upon defendant's certification, plaintiff proceeded to have shoring towers fabricated and shipped to the site of the viaduct construction. Whether plaintiff relied upon defendant's certification in entering into the contract with Maxwell was not put in issue by plaintiff's pleadings. Furthermore, the court's finding that plaintiff did not rely upon defendant's certification when entering into the contract with Maxwell was not the basis of the court's holding that plaintifff was not entitled to recover from defendant.

We conclude that there is no substantial evidence of causation between defendant's failure to discover the defect in the design of the shoring system and plaintiff's expenditure of $45,024.85 for the additional bracing to correct the defect.

■ Plaintiff also alleged that because of defendant's failure to discover the defect, plaintiff was required to spend $5,275.96 for constructing and testing a second prototype.

Plaintiff's design contemplated a shoring tower utilizing interchangeable parts that could be reused by the contractor. The towers were to be manufactured in sections and put together at the construction site to reach the desired height. These sections were fabricated in two different sizes, some 10 feet in length and others 20 feet.

All of the 10-foot sections were braced from top to bottom with an "X" brace. Some of the 20-foot sections were braced in the center with an "X" brace only. Other 20-foot sections had, in addition to the "X" bracing in the center, a "K" brace above the "X" brace. As such, there were three sections of different design, and obviously each would have to be included in a test to determine if the tower would support a vertical weight of 400,000 pounds.

The prototype which plaintiff tested consisted of one 10-foot section and one 20-foot section. The 20-foot section was one which had both the "X" and the "K" bracing. The bracing was adequate and the test proved to be successful. However, the prototype tested did not include one of the 20-foot sections braced with an "X" brace only. It was this type of section which the plaintiff, and later the defendant, found to be inadequate.

The plaintiff was obligated under his contract with Maxwell Company to construct a tower meeting certain specifications and to test to determine if the tower met the requirements. Even if defendant had discovered the defect, the plaintiff would still have had to conduct another test to include the omitted section. Until plaintiff had conducted a test including all necessary sections he had not satisfied his obligation to Maxwell. The defendant's failure to discover the defect was not a cause of the expense of conducting the second test.

During the trial and after defendant had completed its case, plaintiff moved to amend its complaint and reopen its case to allege that had defendant discovered the defect prior to the time the shoring towers had been fabricated and shipped to the construction site, plaintiff could have redesigned the towers and would have been able to fabricate them within the price terms of the contract with Maxwell. The court refused to allow the amendment and to reopen the case. Plaintiff contends that the court erred in denying the motion.

■■ It is well established that a ruling on a motion to amend pleadings is within the discretion of the trial court and that this court will not reverse the trial court on such a matter unless a manifest abuse of discretion has occurred. *Rankin v. White*, 258 Or 252, 482 P2d 530 (1971); *Morrill v. Rountree*, 242 Or 320, 408 P2d 932 (1966). The requested amendment came at the conclusion of defendant's case and sought to change the amount and method of computing damages. The trial court did not abuse its discretion by refusing to allow plaintiff to amend his complaint at this point in the proceedings. See *Rankin v. White*, supra at 255.

The trial court found that both parties were negligent causing the plaintiff's damage and entered a judgment for defendant. We find that the judgment entered for defendant was proper for the reasons we have mentioned. Therefore, the judgment is affirmed.