Argued and submitted May 6, reversed and remanded for reconsideration July 10, 1985

# MEILING,
*Petitioner,*

*v.*

# EMPLOYMENT DIVISION et al,
*Respondents.*

(84-AB-928; CA A32023)

702 P2d 1151

David C. Force, Eugene, argued the cause and filed the brief for petitioner.

Michael D. Reynolds, Assistant Attorney General, Salem, waived appearance for respondent Employment Division.

Foster A. Glass, Canyon City, Oregon, waived appearance for respondent Grant County Sheriff's Office.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

In this unemployment compensation case, petitioner seeks judicial review of an order of the Employment Appeals Board denying him unemployment compensation benefits on the ground that he had voluntarily left his employment with the Grant County Sheriff's Office without good cause. He urges that the decision is neither supported by substantial evidence nor properly reasoned. We reverse and remand for reconsideration.

Petitioner left his employment with the Grant County sheriff's office in March, 1984. After his request for unemployment compensation benefits was denied by an administrative decision, he requested a hearing. The referee's decision (which EAB, one member dissenting, adopted as its own) stated, in pertinent part:

"FINDINGS OF FACT: (1) The [petitioner] worked for the employer as a Corrections Officer from December 1, 1981, to March 12, 1984. (2) He worked from 4:00 p.m. to midnight, five nights per week. (3) His closing rate of pay was $6.50 per hour. (4) For eight years prior to his separation from work, [petitioner] had been bothered by Reiters Syndrome, a form of arthritis caused by stress. (5) Until April 1, 1983, [petitioner] had been on a hard drug for this syndrome. Then, [petitioner] was able to get off the hard drug until October or November of 1983. (6) Starting in October or November of 1983, [petitioner] was unable to get to sleep until 4:00 a.m. or 5:00 a.m. (7) Frequently, his supervisor would phone him at 10:00 a.m. and ask him about some matter connected with [petitioner's] work the preceeding shift. (8) On December 30, 1983, [petitioner] posted a note on the bulletin board asking his supervisor not to phone him in the morning unless there was a genuine emergency. (9) His supervisor replied by saying that if [petitioner] had done his work properly at night, he (the supervisor) would not have to phone [petitioner] in the morning about anything. (10) The [petitioner] had suffered from insomnia for six months before his separation from work. (11) As a result of his nerves being on edge all the time, [petitioner] and his wife had marital difficulties. (12) [Petitioner] quit his employment because of stress and problems he had with his supervisor.

"CONCLUSIONS AND REASONS: [Petitioner] left his work voluntarily without good cause.

"OAR 471-30-038(4) states that 'good cause' for voluntarily leaving work is '[S]uch that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. The reason must be of such gravity that the individual has no reasonable alternative but to leave work.'

"Here, [petitioner] did not have a note from the doctor advising him to leave his employment. It is conceivable that if he had consulted a doctor prior to his leaving his work, something might have been worked out so [petitioner] could have continued working for the employer. Having difficulty getting along with one supervisor is not a circumstance of such gravity that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work."

The referee's explanation contains two different thoughts which are not necessarily related.

First, the referee concluded that it was "conceivable" that consultation with a doctor might have led to petitioner's remaining employed. There is no finding of fact which justifies this speculation. For all the findings of fact—and, indeed, this record—show, nothing petitioner could have done would have made any difference. The problem, according to his testimony (which the referee appears to have accepted) was that his supervisor continued to treat him in an harassing manner.

■　　Second, the referee also concluded that difficulties with "one supervisor" were not—apparently by definition—of sufficient gravity that a reasonable and prudent person would leave work. If such was intended to be a statement of law, it is obviously false. Some disputes with supervisors would justify anyone leaving work. Others—maybe most—would not. However, the blanket statement does a disservice to the inquiry. Moreover, characterizing petitioner as having difficulty with "one" supervisor misses the point: the supervisor in question was the only one to whom petitioner was directly responsible. Moreover, as the evidence demonstrates, petitioner's attempts to contact his supervisor's supervisor, *i.e.,* the sheriff, twice failed to produce any results.

■　　From the foregoing, it is clear that the reasoning by which the referee reached his conclusion that the claimant had left work voluntarily without good cause is profoundly

flawed both because it assumes a fact not in evidence and because it is internally inconsistent. For either and both of the foregoing reasons, the case must be reversed and remanded for reconsideration.

Reversed and remanded for reconsideration.