Argued and submitted April 6, the decisions of the Court of Appeals and trial court affirmed in part and reversed in part; case remanded to trial court for further proceedings August 29, reconsideration denied October 26, 1989

SHEETS,
*Petitioner on Review,*

*v.*

KNIGHT et al,
*Respondents on Review.*
(TC 23-331; CA A41675; SC S35714)
779 P2d 1000

David Gernant, Portland, argued the cause and filed the petition for petitioner on review.

I. Franklin Hunsaker, III, Portland, argued the cause for respondents on review. With him on the response were Christopher A. Rycewicz and Bullivant, Houser, Bailey, Pendergrass and Hoffman, Portland.

Robert D. Durham, Portland, argued the cause for *amici curiae* Oregon Education Association; American Federation of State, County and Municipal Employees, Council 75; and Oregon AFL-CIO. With him on the brief were Margaret S. Olney and Durham, Drummonds, Smith & Wiser, Portland.

Elden M. Rosenthal, Portland, argued the cause for *amicus curiae* Plaintiff Employment Lawyers Association. With him on the brief was Rosenthal & Greene, Portland.

Richard C. Busse and Donald B. Potter, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Jeffrey M. Batchelor, Mark M. Loomis, Scott T. Cliff and Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, filed a brief on behalf of *amici curiae* Oregon Association of Defense Counsel and Associated Oregon Industries.

Before Peterson, Chief Justice, and Linde, Carson, Jones, Van Hoomissen and Fadeley, Justices.

PETERSON, C. J.

## PETERSON, C. J.

We decide whether an employee's forced resignation may be a discharge so as to serve as the predicate for a claim of wrongful discharge. If a resignation may amount to a constructive discharge, then we must determine whether the trial court properly granted the defendants' motion to dismiss the plaintiff's second claim for wrongful discharge.

### THE PLEADINGS AND THE FACTS OF THE CASE

We take the facts from the plaintiff's second amended complaint. The plaintiff, Robert Sheets, was employed by Tillamook County for 14 1/2 years as a building inspector. The defendants Knight, Williams and Woodward, who were Tillamook County Commissioners, informed him that unless he resigned, they would terminate his employment.

He resigned and filed this action. In his first claim[1] the plaintiff alleged a breach of an express contract. He alleged that the county personnel rules, together with certain "implied oral promises" by the defendants, constituted an employment contract, the terms of which were violated by his termination. The plaintiff's third claim alleged that the defendants violated Oregon's Public Meetings Law, ORS 192.610 to 192.695.

The plaintiff's second claim, which is the centerpiece of this controversy, contains a number of different theories of recovery.[2] It alleges that the plaintiff had an "implied" employment contract, the terms of which were breached by his discharge. It also claims that the plaintiff's forced resignation "was a result of plaintiff's knowledge of improper activities by the defendants." Furthermore, it asserts that the defendants forced him to resign because of "personal and political considerations," thereby breaching an implied covenant of good faith and fair dealing. Finally, the second claim alleges that defendant Woodward, motivated by "embarrassment and personal vengence [sic]," sought the plaintiff's resignation on

---

[1] Although the plaintiff used the label "cause of action," we employ the term "claim." ORCP 16B requires that each separate "claim" be separately stated; it makes no reference to separate "causes of action."

[2] The plaintiff's appellate lawyer did not try the case.

account of "vindictiveness." This second claim requests damages for breach of contract and for the plaintiff's "humiliation, mental and physical pain and anguish," and it seeks punitive damages.

Because of the procedural questions discussed below, we will summarize the rulings made by the trial court on the morning of the day trial was to begin. The trial court dismissed the second claim for failure to state ultimate facts sufficient to constitute a claim, ORCP 21A(8), and it granted the defendants' motion under ORCP 21B for judgment on the pleadings with respect to the third claim. In so doing, the trial court held that the plaintiff did not state a claim for wrongful discharge because the complaint failed to allege that the plaintiff was discharged for fulfilling a societal obligation. The court declined to recognize the tort of breach of the duty of good faith and fair dealing in the employment setting. The trial court also ruled that the second claim failed to state a claim for either intentional infliction of emotional distress or tortious interference with contractual relations.

The plaintiff then moved to amend the complaint to attempt to plead facts sufficient to state claims for intentional infliction of emotional distress and tortious interference with contractual relations. The trial court denied the motion on the ground that it was untimely. Unwilling to proceed to trial only on the contract claim, the plaintiff requested and received a voluntary dismissal without prejudice of the first claim under ORCP 54A.

■ The plaintiff appealed from the dismissal of the second claim, assigning as error the trial court's rulings discussed above. The Court of Appeals held that Oregon does not recognize "constructive discharge" and that "because plaintiff resigned, even if the resignation might have been at defendants' request, he has not stated a cause of action for wrongful discharge * * *." *Sheets v. Knight,* 92 Or App 539, 543, 759 P2d 307 (1988). In the alternative, it declared that even if Oregon recognized "constructive discharge," the plaintiff's complaint was deficient because it did not allege that the defendants subjected the plaintiff to intolerable working conditions. 92 Or App at 542-43. Finally, the court also ruled that the trial judge did not abuse his discretion in denying the plaintiff's motion to amend the complaint. 92 Or App at 543. The Court of

Appeals did not address the plaintiff's contention that, even without amendment, the complaint alleged facts sufficient to plead claims for intentional infliction of emotional distress and tortious interference with contractual relations. Because this issue was properly presented to the Court of Appeals, it is properly before us as well, ORAP 10.15(2), and will be discussed below.

## ANALYSIS

### A. Does this Court have Jurisdiction?

As a threshold matter, we must decide whether this court has jurisdiction to decide this case. As noted above, after the second and third claims were dismissed with prejudice, the plaintiff requested and received a voluntary dismissal without prejudice of the first cause of action pursuant to ORCP 54A. The judgment stated in pertinent part:

> "IT IS HEREBY directed that Judgment is entered in favor of Defendants based on this Court's Order dismissing Plaintiff's first claim without prejudice and dismissing Plaintiff's second and third claims with prejudice * * *."

■ Generally, a party may not appeal from a judgment which he or she voluntarily requested unless some previous ruling by the trial court effectively precluded recovery and the plaintiff cannot plead the facts more favorably. *See Farris v. U.S. Fidelity & Guaranty,* 273 Or 628, 633, 542 P2d 1031 (1975); *Steenson v. Robinson,* 236 Or 414, 416-17, 385 P2d 738 (1964). Because the trial court's dismissal of the second and third claims did not bar recovery for breach of contract under the first claim, this rule would preclude the plaintiff's appeal from the judgment entered at his request.

However, this court's ruling in *Taylor v. Baker,* 279 Or 139, 566 P2d 884 (1977), salvages this appeal. In *Taylor* the plaintiff sued two defendants for an injury that she sustained on the defendants' property. The complaint contained two alternative claims for relief. After the trial court granted summary judgment on the first claim, the plaintiff sought and received a voluntary dismissal of the action. 279 Or at 141-42.

Citing *Steenson v. Robinson, supra,* the court acknowledged the general rule that a party may not appeal from a judgment which he or she voluntarily requested. 279 Or at 142. The *Taylor* court concluded, however, that an appeal

from a voluntary dismissal following a partial summary judgment was permissible under the facts in *Taylor*. 279 Or at 143. It reasoned that the rule against appeals from voluntary dismissals is designed largely to prohibit piecemeal appeals and to preclude plaintiffs from seeking "appellate review of one portion of their claim while holding other theories in abeyance, to be refiled in the event of an adverse appellate ruling." 279 Or at 143. The doctrine of *res judicata,* however, would prevent the plaintiff in *Taylor* from employing such a strategy. The court noted that res judicata not only bars relitigation of any claim necessarily determined in a prior judgment, but it also precludes any claim that could have been alleged under the same " 'aggregate of operative facts which compose a single occasion for judicial relief.' " 279 Or at 144 (quoting *Del Monte Meat Co., Inc. v. Hurt,* 277 Or 615, 617, 561 P2d 627 (1977)). It therefore concluded that a "plaintiff's willingness to forego litigation on alternative theories should be sufficient to guarantee that the partial summary judgment had the effect of rendering [a] plaintiff's nonsuit truly involuntary." 279 Or at 144.

■ The same reasoning applies here. The plaintiff's contract claim embodied in his first claim for relief arose from the same aggregate of operative facts as the claims alleged in the second claim for relief which is the subject of this appeal. The doctrine of res judicata would preclude this plaintiff from relitigating the first claim in the event of an adverse ruling on the second claim in this appeal. Therefore, under the reasoning in *Taylor* this court has jurisdiction. We turn then to a discussion of the merits of the appeal.

### B. Did the Complaint Allege a Discharge?

The plaintiff did not allege that the defendants discharged him. Rather, the plaintiff alleged that he "was informed that if he did not resign he would be dismissed by defendants F.E. Knight, Carol Williams, Gerald Woodward and Tillamook County" and that he was forced to resign. The Court of Appeals, as noted above, concluded that the plaintiff could not maintain an action for wrongful discharge because he had resigned from employment. Although this court has

never squarely decided that issue,[3] most other courts have recognized that a resignation is tantamount to a discharge if the resignation was, in effect, involuntary. *See* 1 Tobias, Litigating Wrongful Discharge Claims 7-86 to 7-90, §§ 7:35-7:36 (1987); *see also Beye v. Bureau of National Affairs,* 59 Md App 642, 477 A2d 1197, 1201-02 (1984) (citing numerous cases).[4]

Where the employee unconditionally has been told "resign today or be fired," the employer has decided that the employment relationship is at an end and that the employee shall leave. The employee merely selects the manner in which the employer's will is accomplished. Under such circumstances a fact finder may find that a "resignation" was a discharge. *See Hinthorn v. Roland's of Bloomington, Inc.,* 119 Ill 2d 526, 519 NE2d 909, 912 (1988).

To conclude that a resignation may never amount to a discharge would exalt form over substance and allow employers to use a ruse to escape liability if their conduct was otherwise improper. To paraphrase the court in *Beye v.*

---

[3] In reaching its conclusion that constructive discharge was not recognized in Oregon, the Court of Appeals relied on this court's opinion in *Martin v. Gauld Co.,* 96 Or 635, 638-40, 190 P 717 (1920). *Sheets v. Knight,* 92 Or App 539, 542, 759 P2d 307 (1988). In *Martin* the plaintiff sued the defendant for breach of a contract of employment. The record contained an unambiguous letter of resignation and a letter accepting the resignation. The opinion states:

"The letter of resignation, written and mailed by the plaintiff, and the written reply of defendant, accepting the same, taken together, constitute a contract, which, upon its face, is valid and binding upon the parties. The plaintiff admits the execution of these writings, which are perfectly clear and free from ambiguity, but insists it was a compulsory resignation.

"In other words, although his reply contains no plea other than a denial, he offers evidence which admits the execution of a written contract and seeks to avoid its legal effect. It is elementary that, in the absence of a proper pleading, such evidence in avoidance cannot be considered." 96 Or at 639-40.

There is dictum in the opinion that appears to reject the assertion that a forced resignation can be a discharge. The holding, however, is that the pleadings were deficient. The dictum is disapproved.

[4] Forced discharges also have application outside the wrongful-discharge arena. For instance, an employer violates section 8(a)(3) of the National Labor Relations Act by forcing the employee to resign for having engaged in activities protected by the Act. *See* 1 Morris, The Developing Labor Law 210-12 (2d ed 1983). Likewise, involuntary resignations are treated as discharges in cases involving Title VII and the Age Discrimination in Employment Act. *See* Note, *Choosing a Standard for Constructive Discharge in Title VII Litigation,* 71 Cornell L R 587 (1986); Comment, *Constructive Discharge Under Title VII and the ADEA,* 53 U Chi L R 561 (1986). *See also Meiling v. Employment Division,* 74 Or App 292, 295-96, 702 P2d 1151 (1985) (unemployment compensation may lie for one forced to leave because of working conditions).

*Bureau of National Affairs, supra,* 477 A2d at 1203, it would defy both reason and fairness to hold liable an employer who wrongfully discharges an employee but to immunize from liability an employer who, for equally improper reasons, induces an employee to resign rather than be fired. We therefore conclude that, in the wrongful discharge setting, the resignation of an employee who unconditionally has been told "resign or be fired" may be found to be a discharge by the trier of fact.[5] The plaintiff's allegation that he "was informed that if he did not resign he would be dismissed by defendants" is sufficient to allege a constructive discharge.

This, however, is only the first step in the analysis. To adequately allege and prove a claim for wrongful discharge, an employee who has resigned must allege and prove not only that he was discharged, but that the discharge was *wrongful.* We turn to that question.

*C. Wrongful Discharge and Employment At Will; Oregon Exceptions*

One of the plaintiff's arguments is that his termination from employment constitutes a tortious wrongful discharge under an Oregon exception to the at-will-employment rule. We will trace briefly the development of the at-will-employment rule and its exceptions.

English and early American courts ruled that when a contract provided for an annual salary the employer impliedly agreed to a one-year term of employment during which the employee could not be discharged without good cause. *See* Murg & Scharman, *Employment at Will: Do the Exceptions Overwhelm the Rule?* 23 B C L Rev 329, 332 (1982)(hereinafter cited as Murg & Scharman); Selznick, Society and Industrial Justice 125 (1969). Blackstone explained that

---

[5] This is not to say that every resignation tendered in response to a threatened termination is a constructive discharge. In this case, the defendants' alleged threat to fire the plaintiff unless he resigned was unconditional. He could not avoid the day of reckoning. Contrast this with a situation in which an employee resigns after being told by the employer that "I will fire you unless your job performance improves."

This case comes to us on a motion to dismiss. We hold that the plaintiff's complaint states a claim. There are many facets to this issue. In some situations, an employee may choose to resign to protect pension or other benefits. Our holding, on the case before us, is only that the plaintiff has alleged sufficient facts to permit proof that his resignation was involuntary.

"[i]f the hiring be general without any particular time limited, the law construes it to be a hiring for a year; upon a principle of natural equity, that the servant shall serve, and the master maintain him, throughout all the revolutions of the respective seasons, as well when there is work to be done, as when there is not: but the contract may be made for any larger or smaller term." 1 Blackstone, Commentaries *425.

American courts began to discard this English formulation and to develop an "American rule" in the late nineteenth century. *See* Feinman, *The Development of the Employment at Will Rule,* 20 Am J L Hist 118, 122-23 (1976) (hereinafter cited as Feinman). The crystallization of an "American rule" is attributed to Horace Wood, whose 1877 treatise on employment relations stated:

"With us the rule is inflexible, that a general or indefinite hiring is *prima facie* a hiring at will, and if the servant seeks to make it out a yearly hiring, the burden is upon him to establish it by proof. A hiring at so much a day, week, month or year, no time being specified, is an indefinite hiring * * * and is determinable at the will of either party * * *." Wood, Master and Servant 283, § 136 (2d ed 1886). (Footnote omitted.)

Wood's formulation was accepted by courts and quickly became the "American rule." *See* Feinman, 20 Am J L Hist at 126. Perhaps the classic statement of the rule was rendered in *Payne v. Railroad Company,* 81 Tenn 507, 519-20, 49 Am Rep 666 (1884), *overruled on other grounds, Hutton v. Watters,* 132 Tenn 527, 179 SW2d 134 (1915), in which the Tennessee Supreme Court declared that employers "may dismiss their employes at will, be they many or few, for good cause, for no cause or even for cause morally wrong, without being thereby guilty of a legal wrong." Oregon appears to have recognized this rule in *McKinney v. Statesman Pub. Co.,* 34 Or 509, 511-14, 56 P 651 (1899).[6] By the eve of World War I it had become the law in the " 'great majority of states.' " Feinman,

---

[6] The *McKinney* court declared:

"In *McCullough Iron Co. v. Carpenter,* 67 Md. 554 (11 Atl. 176), it is held that the employment of a person for an indefinite time is a hiring at will, which either party can terminate at pleasure. Mr. Justice Irving delivering the opinion of the court, says: 'There can be no doubt that in this country the rule is, an indefinite hiring is *prima facie* a hiring at will. It is also well settled that a hiring at so much a week, month, or year, no time being specified, does not of itself make more than an indefinite hiring.' " 34 Or at 511-12.

20 Am J L Hist at 126 (quoting Labatt, Master and Servant § 155 (1913)).

Dissatisfaction with the harshness of the rule led legislatures and courts to carve out exceptions. Two notable statutory exceptions, the National Labor Relations Act (NLRA), 29 USC § 141 *et seq,* and Title VII of the 1964 Civil Rights Act, 42 USC § 2000e *et seq,* placed limitations on the types of causes for which employees may be discharged.[7] In addition, some courts have recognized three common-law "exceptions" to the at-will doctrine: discharge in contravention of some significant "public policy"; breach of the implied covenant of good faith and fair dealing; and breach of an implied-in-fact contract.[8] *See generally* Miller & Estes, *Recent Judicial Limitations on the Right to Discharge: A California Trilogy,* 16 U.C. Davis L. Rev. 65 (1982).

Although this court in recent years has recognized several exceptions to the at-will-employment rule, in each instance our opinion has restated the general at-will-employment rule. *See, e.g., Delaney v. Taco Time Int'l,* 297 Or 10, 14, 681 P2d 114 (1984); *Nees v. Hocks,* 272 Or 210, 216, 536 P2d 512 (1975). In *Patton v. J. C. Penney Co.,* 301 Or 117, 120, 719 P2d 854 (1986), we stated that "[g]enerally an employer may discharge an employee at any time and for any reason, absent a contractual, statutory or constitutional requirement [to the contrary]. Termination of employment ordinarily does not create a tortious cause of action." (Citations omitted.)

The *Patton* opinion reviewed a series of recent employment termination cases (*Nees v. Hocks, supra; Holien v. Sears Roebuck & Co.,* 298 Or 76, 689 P2d 1292 (1984); *Delaney v. Taco Time Int'l., supra; Simpson v. Western Graphics,* 293 Or 96, 643 P2d 1276 (1982); *Brown v. Transcon Lines,* 284 Or 597, 588 P2d 1087 (1978); and *Walsh v. Consolidated Freightways,* 278 Or 347, 563 P2d 1205 (1977)) and enumerated the following exceptions: (a) a discharge for exercising a

---

[7] These federal statutes have state analogues. *See* ORS 663.005 to 663.295 (Oregon labor-management relations law); ORS 659.010 to 659.990 (Oregon civil rights law).

[8] To say that an implied-in-fact contract theory is an exception to the at-will-employment rule, as many courts and text writers do, is not accurate. A plaintiff seeks to establish an implied-in-fact contract in order to *deny* that he or she was an at-will employee. In contrast, a plaintiff relying on breach of the covenant of good faith and fair dealing essentially *admits* that he or she was an at-will employee.

job-related right,[9] *Brown v. Transcon Lines, supra* (employee who alleged that he had been discharged for filing workers' compensation claim may bring tort action because statutes forbidding discrimination against employee who files workers' compensation claim constitute legislative recognition of an important public policy and the discharge frustrated that substantial public interest), and (b) a discharge for complying with a public duty, *Nees v. Hocks, supra* (employer can be liable in tort for discharging an employee for serving on a jury).

■ In the relevant portion of the second claim, the plaintiff alleges that his constructive discharge "was a result of plaintiff's knowledge of improper activities by the defendants * * *." He also alleges that the defendants forced him to resign because of "personal and political considerations unto themselves rather than plaintiff's inadequate performance of his duties" and that the plaintiff's resignation was "the result of vindictiveness on the part of defendant Gerald Woodward * * *." These allegations might question the defendants' motivations, but that is not enough to make out a case of wrongful discharge. The pleadings contain no allegations that the plaintiff was "discharged" for complying with or fulfilling a public duty or for exercising an employment-related right.[10] Even if we were to assume that the plaintiff's knowledge of the defendants' "improper activities" related to a public duty or a job-related right, plaintiff fails to plead that, armed with that knowledge, he fulfilled (or would have fulfilled) the public duty or that he exercised (or would have exercised) the

---

[9] In *Holien v. Sears, Roebuck & Co.*, 298 Or 76, 90, 689 P2d 1292 (1984), the court states: "The second category * * * provides that the common law rule for 'at-will' employment prevails unless the employe is discharged while pursuing a right related to his or her role as an employe and the right is one of important public interest indicated by constitutional and statutory provisions and caselaw."

[10] Plaintiff contends that because this is an appeal from a motion to dismiss, this court must, under *Seal v. Polehn*, 284 Or 259, 263, 586 P2d 345 (1978), assume the truth of all plaintiff's well pleaded allegations and any facts that might conceivably be adduced to prove such allegations. In *Seal* the court's leap of faith was quite small. We assumed that the parties intended that an earnest money agreement which referred to itself as a contract was intended by the parties to be a binding contract. Likewise, in *Mezyk v. National Repossessions*, 241 Or 333, 337, 339, 405 P2d 840 (1965), the case on which the *Seal* court relied, the complaint alleged that the defendant acted "negligently" and we merely assumed that the defendant could adduce facts proving negligence. Here, in contrast, the plaintiff would have us try to conceive of facts to supply the missing but crucial link in his concatenation.

job-related right. We therefore affirm the trial court's dismissal of the plaintiff's claim for wrongful discharge.

## D. Duty of Good Faith and Fair Dealing

█ Although the plaintiff's second claim focused mainly on the wrongful discharge exception to the at-will rule, it does not necessarily fail because it did not adequately plead that tort. While a claim for relief may fail to plead a specific theory, it should not be dismissed if it pleads a claim for relief under some theory, even if it was not the one the plaintiff intended.[11] *Windle, Adm'x et al., v. Flinn et al.,* 196 Or 654, 664, 251 P2d 136 (1952); *Patton v. J. C. Penney Co., supra,* 301 Or at 127 n 3 (Linde, J., concurring in part and dissenting in part).

The plaintiff's second claim alleged in part that the defendants forced him to resign because of "personal and political considerations unto themselves." This, contends the plaintiff, amounts to a tortious breach of the implied covenant of good faith and fair dealing. The plaintiff also alleged that the defendants breached the covenant of good faith and fair dealing by discharging him without "just cause." These claims rest on the premise that a covenant of good faith and fair dealing is implied in every at-will employment contract.

Restatement (Second) Contracts § 205 (1981) states that "[e]*very* contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." (Emphasis added.) Williston wrote in terms of "an implied covenant" and declares that in every contract

> "there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; in other words, in *every* contract there exists an implied

---

[11] ORCP 16B now provides:

"Every pleading shall consist of plain and concise statements in paragraphs consecutively numbered throughout the pleading with Arabic numerals, the contents of which shall be limited as far as practicable to a statement of a single set of circumstances, and a paragraph may be referred to by number in all succeeding pleadings. Each separate claim or defense shall be separately stated. *Within each claim alternative theories of recovery shall be identified as separate counts.*" (Emphasis added.)

The last sentence of ORCP 16B (italicized above) became effective in 1988. This case arose under the pre-1988 version of ORCP 16B. We express no opinion on whether the pleading in this case would pass muster under the new rule.

covenant of good faith and fair dealing." 5 Williston, Contracts 159, § 670 (3d ed 1961). (Emphasis added.)

On several occasions we have declared that a "covenant of good faith and fair dealing" is implied in every contract. *See, e.g., Best v. U.S. National Bank,* 303 Or 557, 561, 739 P2d 554 (1987); *Santilli v. State Farm,* 278 Or 53, 61-62, 562 P2d 965 (1977); *Comini v. Union Oil Co.,* 277 Or 753, 756, 562 P2d 175 (1977); *Perkins v. Standard Oil Co.,* 235 Or 7, 16-17, 383 P2d 1002 (1963). It is more correct to say that the law imposes a duty of good faith and fair dealing in the performance of every contract.[12]

■ This court has never held that a duty of good faith and fair dealing applies to at-will-employment contracts, insofar as the right to discharge at will is concerned. For a number of reasons, we decline to do so now. The law imposes a duty of good faith and fair dealing to facilitate performance and enforcement of the contract where it is consistent with and in furtherance of the agreed-upon terms of the contract or where it effectuates "the reasonable contractual expectations of the parties." *Best v. U.S. National Bank, supra,* 303 Or at 563; *see also Associated Oregon Veterans v. DVA,* 300 Or 441, 448-49, 712 P2d 103 (1985) (per curiam); *William C. Cornitius, Inc. v. Wheeler,* 276 Or 747, 754-55, 556 P2d 666 (1976).

■ The foundation of the at-will employment agreement is the express or implied understanding that either party may terminate the contract for any reason, even for a bad cause. A duty of good faith and fair dealing is appropriate in matters pertaining to ongoing performance of at-will employment agreements. It is not appropriate to imply the duty if it is inconsistent with a provision of the contract. *Thompson v. St. Regis Paper Co.,* 102 Wash 2d 219, 685 P2d 1081, 1086 (1984).

The at-will-employment rule has been the rule in

---

[12] The Restatement states that "every contract * * * imposes a duty of good faith and fair dealing" while Williston and our cases declare that "a covenant" of good faith and fair dealing is "implied" in every contract. They are referring to the same thing. The duty of good faith and fair dealing is a contractual term implied into contracts as a matter of contract law, provided the duty is not inconsistent with a term of the contract.

When we have spoken of the duty in terms of an implied "covenant of good faith and fair dealing" we were referring to a duty implied by law. Referring to it as a "covenant" may lead to confusion.

Oregon for nearly a century.[13] As stated above, as recently as 1986 this court stated that "[g]enerally an employer may discharge an [at-will] employee at any time and for any reason, absent a contractual, statutory or constitutional requirement [to the contrary]." *Patton v. J. C. Penney Co., supra,* 301 Or at 120. "Private employers who engage in the free enterprise system * * * can fire [at-will] employees at any time * * *." 301 Or at 123.

In sum, we conclude that the interests of at-will employers and employees are presently accommodated in a manner which, though criticized, is well understood.

### E. Contract Implied in Fact

The plaintiff's second claim includes an assertion that during the course of his 14 1/2 year employment relation with the county an implied-in-fact contract developed. The terms of this contract, he maintains, are established by the county's personnel rules, policies, and procedures, which apparently require "good cause" for discharge and which were enacted after the plaintiff was initially appointed to office. He alleges that the defendants breached this contract by forcing him to resign. The defendants argue in essence that these county personnel rules did not apply to the plaintiff because he was appointed by and served at the pleasure of the Board of County Commissioners under ORS 204.601(2) and ORS 455.150(1).[14]

---

[13] However, in dicta we twice suggested that the covenant might be implied in at-will contracts. *See State ex rel Roberts v. Public Finance Co.,* 294 Or 713, 719 n 4, 662 P2d 330 (1983); *Best v. U.S. National Bank,* 303 Or 557, 564, 739 P2d 554 (1987). Although these cases referred to at-will employment, the dicta is better understood as dealing with situations in which the employee had developed a reasonable expectation of continued employment. Because at-will employees may be fired at any time and for any reason, they have no reasonable expectation of continued employment. Such a reasonable expectation is only present where the at-will contract has been supplanted by some other contractual relationship, like an implied-in-fact contract.

[14] ORS 455.150(1) provides in relevant part:

"When a municipality administers and enforces all or part of the plumbing, electrical, structural or mechanical, heating, ventilating codes and the One and Two Family Dwelling Code * * *, the governing body of the municipality shall, unless other means are already provided, appoint a person to administer and enforce such specialty codes or parts thereof, who shall be known as the building official."

ORS 204.601 provides in pertinent part:

"(1) The * * * board of county commissioners of each county shall fix the

■ The defendants' reliance on these provisions is misplaced. ORS 204.121 provides:

> "It is the intent of the Legislative Assembly that no provision of ORS 204.116, 204.126 or *204.601* shall supersede any provision of the county civil service law, and when any conflict arises between any provision of ORS 204.116, 204.126 or *204.601* and any provision of the county civil service law, then the county civil service law shall prevail." (Emphasis added.)

The plaintiff alleges that an "implied agreement" existed because of county rules and personnel policies. If the county personnel rules apply to the plaintiff (and the plaintiff's complaint alleges that they do), then under ORS 204.121 they supersede the statutory provisions on which the defendants rely.

■ ■ Section A of the county rules, under the heading "Disciplinary Action," states what action "shall be considered good cause for disciplinary action." Such causes include "any action which reflects discredit upon the county service, * * * misconduct, inefficiency, incompetence, insubordination, indolence [and] malfeasance," among others. Section A also provides for an appeal by any discharged employee. The plaintiff's allegation that these rules created an implied agreement is sufficient to survive a motion to dismiss. *See Graves v. Arnado,* 307 Or 358, 363, 768 P2d 910 (1989). Moreover, even if the county personnel rules do not expressly apply to persons of the plaintiff's rank or office, they could (as the plaintiff suggests) become an implied part of his contract. *See Yartzoff v. Democrat-Herald Publishing Co.,* 281 Or 651, 656, 576 P2d 356 (1978). The second claim sufficiently alleges a claim of an implied-in-fact contract.

### F. Intentional Infliction of Emotional Distress

Paragraph 23 of the second claim alleges in part that the plaintiff's forced resignation

> "was the result of vindictiveness on the part of Gerald Woodward, who had attempted improperly and unsuccessfully to charge plaintiff with misconduct during the months of

---

number of deputies and employes of county officers whose compensation is to be paid from county funds.

"(2) All such deputies and employes shall be appointed by such county officer, and shall hold office during the pleasure of the appointing officer."

"August, September and October 1981. Plaintiff alleges that defendant Woodward's actions were motivated by embarrassment and personal vengence [sic], rather than plaintiff's inadequate performance of his duties and terms of his employment."

The plaintiff also alleges that the defendants forced him to resign because of "personal and political considerations unto themselves rather than plaintiff's inadequate performance" and that as a result of this behavior, he "has suffered and continues to suffer humiliation, [and] mental and physical pain and anguish * * *." This, asserts the plaintiff, states a claim for intentional infliction of severe emotional distress. The trial court thought not. We agree with the trial court.

 To state a claim for intentional infliction of severe emotional distress, a plaintiff must plead that (1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. *Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 626, 733 P2d 430 (1987). The plaintiff must allege that the defendant specifically intended to cause severe emotional distress. It is insufficient merely to allege that the defendant intentionally acted in a way that caused severe emotional distress. *Patton v. J. C. Penney Co., supra,* 301 Or at 122. In *Patton* we held that a discharge from employment, without more, did not amount to an extraordinary transgression of the bounds of socially tolerable behavior. 301 Or at 123-24.

 The plaintiff here fails to allege that the defendant Woodward acted with the specific intent to inflict severe emotional distress. Likewise, an allegation that the defendant acted out of vengeance or because of embarrassment is inadequate because it does not assert that the defendant sought to inflict severe emotional distress.[15]

---

[15] The trial court also denied the plaintiff's motion to amend his complaint on the morning on which trial was to have begun to plead facts sufficient to state a claim. ORCP 23A allows for amendments with leave of the court, which shall be granted where "justice so requires." The general rule is that "a ruling on a motion to amend pleadings is within the discretion of the trial court and that this court will not reverse the trial court on such a matter unless a manifest abuse of discretion has occurred." *Pacific Form Corp. v. Burgstahler,* 263 Or 266, 274, 501 P2d 308 (1972). The trial court did not abuse its discretion in denying the plaintiff's motion.

*G. Intentional Interference with Contractual Relations*

 Neither do the allegations state a claim for intentional interference with contractual relations. To state a claim for intentional interference with contractual relations, a plaintiff must plead that the defendant, either with an improper objective or through improper means, purposefully interfered with the plaintiff's contractual relationship with some third party, thereby causing the plaintiff damage. *Top Service Body Shop v. Allstate Ins. Co.,* 283 Or 201, 205, 209-10, 582 P2d 1365 (1978). An at-will-employment contract can form the basis of an intentional-interference claim. *Lewis v. Oregon Beauty Supply Co., supra,* 302 Or at 620-21; *Campbell v. Ford Industries, Inc.,* 274 Or 243, 252 & n 8, 546 P2d 141 (1976).

 The plaintiff's bald allegations concerning the reasons for his forced resignation are insufficient to establish that the defendants acted with an improper motivation or used improper means to interfere with the plaintiff's employment contract.

## CONCLUSION

With respect to the merits of this case, we hold that: (1) the plaintiff's complaint contained allegations sufficient to establish constructive discharge; (2) the plaintiff's complaint failed to state a claim for wrongful discharge; (3) the duty of good faith and fair dealing does not modify the term of an at-will-employment contract; (4) plaintiff's second claim alleged facts sufficient to plead breach of an implied-in-fact contract; (5) the plaintiff's complaint failed to state a claim for intentional infliction of severe emotional distress; (6) the trial court did not abuse its discretion in refusing to allow the plaintiff to amend on the morning of trial; and (7) that the plaintiff's complaint failed to plead a claim for intentional interference with contractual relations.

The decision of the Court of Appeals is affirmed in part and reversed in part. The decision of the trial court is affirmed in part and reversed in part. The case is remanded to the trial court for further proceedings consistent with this opinion.