Argued and submitted January 21, 2004, on appeal, reversed and remanded; on cross-appeal, affirmed March 2, petition for review denied July 19, 2005 (339 Or 66)

Tony ZIEBERT,
individually and as Personal Representative for
Loretta Ziebert, deceased,
*Respondent - Cross-Appellant,*

*v.*

SUN VALLEY LUMBER, INC.,
an Oregon corporation,
*Appellant,*

*and*

MID-WILLAMETTE PRE-CUT, INC.,
Tolo Forest Products, Inc.,
Diamond Forest Products, Inc.,
and other wholly owned subsidiaries of
Sun Valley Lumber, Inc.,
*Defendants,*

*and*

John TAYLOR,
aka John Boyer;
Lynn M. Meier;
and Lloyd Ziebert,
*Defendants - Cross-Respondents.*

98-2445; A118358

107 P3d 668

164

Kevin T. Lafky argued the cause and filed the briefs for appellant.

William D. Stark argued the cause for respondent - cross-appellant.

F. James Healy argued the cause for defendants - cross-respondents. With him on the brief were Daisy A. Hering and Long, Delapoer, Healy, McCann & Noonan, P.C.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

ORTEGA, J.

**ORTEGA, J.**

This dispute arose from a failed settlement between plaintiff Tony Ziebert, defendant Sun Valley Lumber, Inc. (Sun Valley),[1] the close corporation of which he is part owner, and three individual defendants, John Taylor (aka John Boyer), Lynn Meier, and Lloyd Ziebert. The individual defendants are managers and part owners of Sun Valley, and apparently two of them are plaintiff's children. Plaintiff, on behalf of himself and as personal representative of the estate of his deceased wife, Loretta Ziebert, asserted a breach of contract claim against Sun Valley and a claim for intentional interference with economic relations against the individual defendants. The trial court granted plaintiff's motion for summary judgment as to his claim against Sun Valley and granted the individual defendants' motion for summary judgment as to the claim against them. On appeal, Sun Valley assigns error to the trial court's grant of summary judgment to plaintiff on the breach of contract claim, and plaintiff cross-appeals the trial court's grant of summary judgment to the individual defendants. We reverse the judgment for plaintiff on the breach of contract claim and affirm the judgment for the individual defendants on the intentional interference claim.[2]

■ Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C. Because the facts of this case are not in dispute, we review to determine whether the moving parties are entitled to judgment as a matter of law.

In 1992, plaintiff filed an action (the 1992 action) against the same defendants—that is, Sun Valley and the

---

[1] Various wholly owned subsidiaries were also named as defendants but are not parties to this appeal.

[2] We also grant Sun Valley's motion to strike certain portions of plaintiff's excerpt of record. ORAP 5.50(7) requires that any documents included in the excerpt of record be part of the record of the case on appeal. Plaintiff included in his excerpt of record deposition testimony of the individual defendants taken in a separate case between the parties. That deposition testimony was not included in the record of this case. Although that testimony does not appear to add anything to our analysis, we nevertheless strike those portions of plaintiff's excerpt of record.

individual defendants—as well as another of his sons, Loren Ziebert, who also is a part-owner of Sun Valley. The 1992 action likewise arose out of a failed settlement between the parties relating to a prior corporate dispute. Plaintiff asserted a breach of contract claim, alleging that Sun Valley and that group of individual defendants had breached the prior settlement agreement and that the individual defendants were "primarily liable" for the amounts owed under that agreement. In addition to seeking money damages, plaintiff requested that the court enter a declaratory judgment stating that, "[p]ursuant to the various agreements of the parties * * * and pursuant to ORS 60.774, plaintiff is entitled to access to all financial and accounting records" of Sun Valley. Plaintiff also sought a decree of specific performance ordering defendants to "provide him access to all financial and accounting records" of Sun Valley.

In February 1995, the parties entered into a second settlement agreement to resolve the 1992 action. It is that settlement agreement (the agreement) that is the subject of this case. In the agreement, plaintiff agreed to "dismiss with prejudice" the 1992 action "and all claims made in the Second Amended Complaint therein." In exchange, Sun Valley agreed to make separate payments to both plaintiff and his wife Loretta Ziebert (who had not been a party to the 1992 action) as follows: a lump-sum payment of $34,000, payments of $750 per month for 36 months, and, at the conclusion of the $750 payments, payments of $500 per month for life. The agreement stated that Loretta Ziebert "need not sign this agreement but the agreement is binding and valid to pay her the above sums." In addition to the payments, Sun Valley and the individual defendants agreed to "dismiss with prejudice all counterclaims" against plaintiff. Plaintiff and all of the individual defendants signed the agreement, and the court entered a stipulated judgment of dismissal that dismissed plaintiff's claims and defendants' counterclaims with prejudice.

Three years later, Loren Ziebert filed yet another action against Sun Valley (the 1998 action) seeking to have the court require Sun Valley to provide all of its accounting records for the preceding 10 years. The trial court granted that request. Although plaintiff was not a party to the 1998

action, he attended those proceedings with his attorney and made his own request to the court to review Sun Valley's accounting records for the entire 10-year period at issue. The trial court in the 1998 action granted plaintiff "full access to any information learned or discovered in this inspection upon providing the court with a non-disclosure agreement." Plaintiff did so and was given access to Sun Valley's accounting records dating back to 1988—records that preceded the 1992 action by four years. Sun Valley's attorney sent plaintiff a letter asserting that plaintiff had violated the agreement settling the 1992 action and informing him that the monthly payments pursuant to that agreement would be terminated.

Following termination of the monthly payments, plaintiff brought this action for breach of contract against Sun Valley. Plaintiff contends that Sun Valley had no basis for terminating the payments owed under the agreement because he did not violate that agreement by requesting and obtaining a court-ordered opportunity to review Sun Valley's corporate records dating back to 1988. Plaintiff maintained that he was simply exercising his rights as a shareholder, none of which had been waived by the agreement. Plaintiff also sued the individual defendants for intentional interference with economic relations, alleging that the individual defendants interfered with plaintiff's agreement with Sun Valley by causing Sun Valley to terminate the payments owed to him under the agreement. The trial court awarded summary judgment to plaintiff on the breach of contract claim and awarded summary judgment to the individual defendants on the intentional interference claim.

■ We begin with the breach of contract claim. Resolution of that claim depends on whether plaintiff materially breached the agreement himself when he requested and obtained corporate records that predated the 1992 action, thereby excusing Sun Valley's contractual obligation to make monthly payments. *See Wasserburger v. Amer. Sci. Chem.*, 267 Or 77, 82, 514 P2d 1097 (1973) (a material breach by one party to a bilateral contract justifies refusal of the other party to perform a contractual duty). In granting summary judgment to plaintiff, the trial court concluded that Sun Valley's performance was not so excused because plaintiff was merely exercising his rights as a shareholder; in the court's words,

"waiver of [p]laintiff's stockholder rights are simply not a part of the agreement." Sun Valley contends that the agreement is, at the very least, ambiguous, because it could be sensibly interpreted to preclude assertion of any further right to inspect corporate records that existed as of the time of the 1992 action. We agree with Sun Valley.

■■■ A settlement agreement like the one at issue here is subject to the ordinary rules of contract construction. *See Ristau v. Wescold, Inc.*, 318 Or 383, 387, 868 P2d 1331 (1994). Disputes over the meaning of a contract may not be disposed of by summary judgment if the contract's terms are ambiguous. *Western Surety Co. v. FDS Diving Construction*, 193 Or App 1, 6, 88 P3d 293 (2004). The terms of a contract are ambiguous if they are capable of more than one sensible and reasonable interpretation. *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 317, 696 P2d 1096, *rev den*, 299 Or 314 (1985). Whether the terms of a contract are ambiguous is a question of law. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997).

The terms of the agreement here are ambiguous. Plaintiff agreed to "dismiss with prejudice" two separate claims brought in the 1992 action in which plaintiff demanded "access to all financial and accounting records." Later, though, in the context of Loren Ziebert's 1998 action against Sun Valley, plaintiff requested and obtained access to financial and accounting records dating back to 1988—including access to four years of records that were directly at issue in the 1992 action. Plaintiff argues that there is no text in the agreement that suggests that he gave up his shareholder rights to inspect Sun Valley's records. Thus, he necessarily contends that, although the agreement required him to dismiss claims in which he demanded access to corporate records, it allowed him to continue to pursue alternative avenues—including subsequent suits—for advancing the very same claims.

Sun Valley concedes that plaintiff's interpretation of the agreement may be viewed as reasonable, but asserts that it is certainly not the only reasonable interpretation. We agree. The agreement, when viewed in light of the substance of the claims dismissed and the substantial consideration

given for their dismissal, can reasonably be interpreted as a waiver of plaintiff's shareholder rights to inspect any of Sun Valley's records that were in existence prior to the filing of the 1992 action.[3] In exchange, at least in part, for plaintiff's dismissal of claims that sought to require Sun Valley to produce financial and accounting records that predate the suit, the agreement obligates Sun Valley to make payments to plaintiff and his wife for the rest of their lives. A jury could reasonably interpret the agreement to require plaintiff not to pursue alternative avenues for obtaining the very records that were the subject of those claims, so that his actions in pursuing the records constitute a material breach of the agreement that justifies Sun Valley's refusal to perform. Accordingly, the settlement agreement was, at the very least, ambiguous, and the trial court's award of summary judgment to plaintiff was in error.[4]

■■ We next address the trial court's grant of summary judgment to the individual defendants on plaintiff's claim for intentional interference with economic relations. Plaintiff contends that the individual defendants intentionally interfered with Sun Valley's obligation to make monthly payments under the agreement. To recover under that theory, plaintiff must establish the following elements: (1) the existence of a professional or business relationship, (2) intentional interference with that relationship, (3) *by a third party*, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damages to the economic relationship, and (6) damages. *See McGanty v. Staudenraus*, 321 Or 532, 535, 901 P2d 841 (1995).

■ In disposing of plaintiff's claim on summary judgment, the trial court held that the individual defendants

---

[3] Sun Valley concedes that plaintiff, by entering into the settlement agreement, did not forfeit his shareholder rights to inspect corporate records created after the 1992 action.

[4] In addition to assigning error to the trial court's grant of summary judgment to plaintiff on his breach of contract claim, Sun Valley also assigns error to the trial court's grant of prejudgment interest to plaintiff, contending that the settlement agreement specifically stated that such interest would not be recoverable. Because we reverse the trial court's grant of summary judgment to plaintiff, we do not reach the issue of whether the grant of prejudgment interest to plaintiff was correct.

were not "third parties" to the settlement agreement. Therefore, the trial court reasoned, plaintiff failed to meet the third element of a claim for intentional interference with economic relations. As the trial court recognized, "a party to a contract cannot be liable for interference with that contract but only for breaching it." *Sakelaris v. Mayfair Realty, Inc.*, 284 Or 581, 588, 284 P2d 23 (1978). That rule is sensible because parties to a contract are protected by contract law. The tort of intentional interference with economic relations "serves as a means of protecting contracting parties against interference in their contracts from *outside* parties." *McGanty*, 321 Or at 536 (emphasis in original).

Although we also conclude that the individual defendants were not third parties to the settlement agreement and therefore could not tortiously interfere with it, we do so on a different basis from the trial court. In concluding that the individual defendants were not "third parties" who could tortiously interfere with performance of the agreement, the trial court emphasized that the decision by those defendants to discontinue Sun Valley's payments to plaintiff was made within the course of their employment with Sun Valley as corporate managers. *See Butler v. Dept. of Corrections*, 138 Or App 190, 197, 909 P2d 163 (1995) (where an employee of a contracting party acts within the scope of her authority intending to benefit the principal, we identify her actions with that contracting party). On appeal, however, the individual defendants now concede that the record on summary judgment is not sufficient to establish, as a matter of law, that they were acting within the scope of their employment as corporate managers when they decided to discontinue Sun Valley's payments under the agreement. Nevertheless, they contend that summary judgment was proper for an alternative reason: the individual defendants were themselves parties to the agreement. Thus, even if the individual defendants were acting on their own behalf, and not as agents of Sun Valley, they still could not be liable for tortiously interfering with Sun Valley's performance of the agreement. Because we agree, we affirm the trial court's decision on that alternative basis.[5]

---

[5] *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (permitting a reviewing court to affirm the ruling of a lower court on

■ "One is a party to an agreement not only by promising to do certain things but also by being the recipient of another's obligation to perform." *H.N.M. Enterprises, Inc. v. Hamilton*, 49 Or App 613, 623, 621 P2d 57 (1980). Here, the individual defendants were recipients of plaintiff's obligation to dismiss with prejudice all claims against them, including a breach of contract claim in which plaintiff alleged that they were "primarily liable." In exchange, the individual defendants agreed to dismiss with prejudice all their counterclaims against plaintiff in the 1992 action.

Plaintiff asserts the novel theory that the individual defendants were not parties to the portion of the agreement that requires Sun Valley to make monthly payments to plaintiff and that, as a consequence, we should segregate the benefits and obligations relating to Sun Valley from those relating to the individual defendants. He maintains that because Sun Valley, not the individual defendants, was obligated to make payments under the agreement, the individual defendants are "third parties" who can tortiously interfere with the payment portion of the agreement. However, plaintiff has cited no authority that supports such a theory,[6] nor has he pointed to any text in the agreement suggesting such a division of benefits and obligations.

Indeed, the text of the agreement is to the contrary. The benefits and obligations of the agreement are wholly interdependent: plaintiff's one obligation was to dismiss with prejudice "all claims made in the Second Amended Complaint" in the 1992 litigation—making no distinction between claims against Sun Valley and those against the individual defendants—in exchange for payments by Sun Valley *and*

---

an alternative basis where (1) the facts of record are sufficient to support the alternative basis for affirmance, (2) the trial court's ruling is consistent with the view of the evidence under the alternative basis for affirmance, and (3) the record is materially the same as it would have been had the prevailing party raised the alternative basis for affirmance below). Because this alternative basis for affirmance was argued to the trial court below, our record on appeal is sufficient to support it.

[6] The only Oregon case that plaintiff cites in support of his theory that discusses the tort of intentional interference with contractual relations is *RMS Technology, Inc. v. Stenbock*, 113 Or App 344, 832 P2d 1260 (1992). In *RMS Technology, Inc.*, an employee alleged that the manager of a corporation tortiously interfered with his employment contract with the corporation. *Id.* at 346. Because the manager was not a party to the employment agreement between the corporation and the employee, the case is inapposite to this case.

the dismissal of all counterclaims by all of the defendants. Conversely, then, the benefit that the individual defendants received under the agreement (dismissal of the claims against them) was dependent, in part, on Sun Valley's promise to make monthly payments. To the extent that the individual defendants interfered with Sun Valley's obligation to make payments to plaintiff, they interfered with an obligation on which their own benefit under the agreement depended. Because the benefits and obligations of the agreement are interdependent, the agreement constitutes an indivisible contract. The individual defendants are parties to all sections of the agreement, including the provisions regarding payment. Therefore, as parties to the agreement, the individual defendants cannot, as a matter of law, be liable for interference with the agreement, but only for breaching it.[7]

On appeal, reversed and remanded; on cross-appeal, affirmed.

---

[7] Plaintiff urges us to consider Loretta Ziebert's claim against the individual defendants for intentional interference with economic relations separately because she was a "third-party beneficiary entitled to the benefits of the contract." Even assuming that to be true, however, her estate still would not have a claim against the individual defendants for the reasons just discussed.