Argued and submitted February 14, 2005, affirmed February 15, 2006

# Joseph BRUNICK,
## *Appellant,*

*v.*

# CLATSOP COUNTY,
## John Raichl, Cora Lane,
## Charles Hatcher and Ron Stevens,
## *Respondents.*

## 01-2187; A122339

129 P3d 738

Thane Tienson argued the cause for appellant. On the briefs were Dain Paulson and Landye Bennett Blumstein LLP.

Cecil A. Reniche-Smith argued the cause for respondents. With her on the brief were Janet M. Schroer and Hoffman, Hart & Wagner, LLP.

Before Landau, Presiding Judge, and Brewer, Chief Judge,* and Armstrong, Judge.

* Brewer, C. J., *vice* Richardson, S. J.

ARMSTRONG, J.

## ARMSTRONG, J.

Plaintiff appeals from the trial court's grant of summary judgment to defendants on his wrongful discharge claims. He first assigns error to the trial court's conclusion that, because plaintiff was an at-will county employee, the county was not obligated to afford him due process when it terminated his employment with the county. He asserts that the trial court erred in concluding that he was an at-will employee because (1) Clatsop County's personnel policies created an implied term in his employment contract that provided for his termination from employment only for cause; and (2) he had settled a dispute with the county in 1983 and the settlement agreement provided that, regardless of his position in the sheriff's department, he could be terminated only for cause. For those same reasons, plaintiff assigns error to the trial court's rejection of his breach of contract claim. Finally, plaintiff assigns error to the trial court's conclusion that the record did not present an issue of material fact on whether his discharge was motivated by a desire to retaliate against him for his speech on a matter of public concern, which would constitute a violation of the First Amendment that would make his termination from employment wrongful. We affirm.

We review the summary judgment record in the light most favorable to plaintiff, the nonmoving party, to determine whether there are any issues of material fact and whether defendants are entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). Plaintiff began working for the Clatsop County Sheriff's Department in 1975. From 1975 through 1999, he held various positions, including jail commander, deputy, senior corporal sergeant, and emergency services coordinator. Before 1987, plaintiff was a member of the sheriff's office union, AFSCME Local Union No. 2746. While he was a member of the union, plaintiff held several positions, including chief steward.

In 1981, the county terminated plaintiff's employment. Plaintiff filed an action against defendant alleging that his termination was wrongful and in retaliation for union

activities. The parties settled the action, and plaintiff was reinstated to his former position. The parties' written settlement agreement provided, in part:

> "[Plaintiff] will be reinstated into the full-time position of Emergency Services Coordinator effective on the date of this agreement and commencing service on December 1, 1983. This position will be placed into the Sheriff's Department bargaining unit.

> "[Plaintiff] will be fully commissioned for this position and for any other position in the Clatsop County Sheriff's Office. Sheriff Almond Eastman, Clatsop County, AFSCME Council 75 and AFSCME Local Union No. 2746 consent and agree to the placement of the position in the Sheriff's Office Unit for all collective bargaining purposes. The job description for the position is set forth as Exhibit A to this agreement. [Plaintiff] will be accorded all the rights of a bargaining unit employee. The County and/or the Sheriff's Department shall retain the right to modify the job description attached hereto but any modification shall be done in good faith in accordance with applicable law and not for the purposes of circumventing this settlement agreement."

In 1985, the Clatsop County commissioners adopted "uniform county personnel policies and procedures." Section 4.4.5 of that enactment provided that "[e]mployees who have successfully completed their probationary period may be separated from County service only for just cause." In 1988, plaintiff was appointed jail commander. That appointment required him to resign from the union. That same year, Clatsop County adopted a home-rule charter. The charter required the board of county commissioners to establish personnel policies by ordinance. The county enacted such an ordinance on December 20, 1990. The ordinance included a disclaimer:

> "The Board of Commissioners has the right at any time to amend or to modify this ordinance or to repeal it, so long as consistent with the County Charter. No provision of this ordinance shall be deemed to have created any contractual or vested right in any employee or to limit the power of the Board of Commissioners to amend, modify or repeal this ordinance."

The ordinance also stated that the commissioners were delegating the responsibility to develop detailed personnel policies in accordance with the ordinance:

"The Board of County Commissioners recognizes that the management of the County and the administration of the personnel affairs of the County are administrative matters and are not legislative functions. For that reason, and also because there are complex and constantly changing state and federal regulations affecting County employees, it would be unwise, inefficient and impractical to attempt to incorporate details of Personnel Policies in an ordinance. The Board of County Commissioners thus hereby expressly authorizes and directs the County Manager to adopt Personnel Policies by administrative actions. Such policies shall be in accordance with this ordinance and shall be to carry out the goals and policies of this ordinance. Such Personnel Policies as adopted shall be deemed to be not the making of new law but instead to be the execution and implementation of the personnel system and policies provided for in this and other applicable ordinances."

In 1999, one of the defendants, Raichl, was the Clatsop County Sheriff. In February 1999, he suspended plaintiff after informing him that the union members whom plaintiff supervised had taken a vote that stated that they had no confidence in plaintiff as the jail commander. Raichl then hired an investigator to explore complaints that union members had made about plaintiff. On June 16, Raichl sent plaintiff a letter stating that Raichl had a number of concerns about plaintiff's performance as jail commander and that he was planning to terminate plaintiff's employment on or before July 12. The letter criticized plaintiff's performance in a number of ways. According to the letter, plaintiff was deficient in the following respects: (1) plaintiff failed to keep the jail's policies and inmate manual current and thereby exposed employees to "potentially dangerous and unsafe working conditions," (2) plaintiff failed to complete evaluations of his subordinates in a timely manner, (3) plaintiff manipulated official documents and ordered his subordinates to create documents on his behalf, (4) plaintiff harassed and retaliated against one of his subordinates, (5) plaintiff committed an unfair labor practice, (6) plaintiff did not perform

his job duties in a professional manner, (7) plaintiff's subordinates did not trust him and lacked confidence in him, and (8) plaintiff was unwilling to work with and consistently demonstrated animosity towards Raichl. Plaintiff was discharged on August 9, 1999. Plaintiff appealed his discharge to the county manager, Ferguson. After a hearing, she affirmed the discharge.

Plaintiff then filed this action alleging that, by terminating his employment without cause, the county had breached express and implied contracts between it and plaintiff, had breached the duty of good faith and fair dealing, and had wrongfully discharged plaintiff. Plaintiff also alleged that other defendants had wrongfully interfered with his contractual relationship with the county; had violated his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution; and had engaged in a civil conspiracy against him.

Defendants moved for summary judgment on plaintiff's claims, arguing that plaintiff was an at-will employee; that defendants had not violated plaintiff's constitutional rights; that, as a matter of law, all of the individual defendants should be dismissed from the action; and that plaintiff's claim for civil conspiracy should be dismissed.

The trial court granted defendants' motion for summary judgment. As noted, plaintiff appeals, asserting that the trial court erred in concluding that he was an at-will employee and that defendants were not required to afford him due process regarding his termination. He also assigns error to the trial court's conclusion that defendant did not violate the First Amendment by terminating his county employment in retaliation for statements that he had made about matters of public concern.

■ Plaintiff makes two arguments in support of his first assignment of error. He first argues that he was not an at-will employee because, under the 1985 county personnel policy, he could be terminated only for cause. Second, plaintiff argues that his 1983 settlement agreement with the county gave him a protected property interest in his position that required the county to afford him due process in terminating

his employment. Defendants respond that the 1985 personnel policy was superseded by employment rules enacted in 1990 and that the 1983 settlement was limited to the position of emergency services coordinator—the position to which plaintiff was reinstated—and did not extend to any other position that plaintiff subsequently held with the county.

■ Whether the federal constitution required the county to follow any particular procedures before terminating plaintiff's employment turns initially on whether plaintiff had a property interest in his position as jail commander. *Board of Regents v. Roth*, 408 US 564, 569, 92 S Ct 2701, 33 L Ed 2d 548 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.").[1] Constitutionally protected property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 577. An express or implied contract term providing that an employee can be terminated only for cause may be sufficient to create such an expectation. *Yartzoff v. Democrat-Herald Publishing Co.*, 281 Or 651, 656, 576 P2d 356 (1978). We therefore consider whether either the 1985 rules or the 1983 settlement give rise to an express or implied "just cause" term.

The parties dispute which set of personnel rules was in effect when the county terminated plaintiff's employment and the import of those rules. Plaintiff argues that, because he became jail commander in 1987, the 1985 personnel policy in effect at that time governs his employment and forms a part of his contract with the county. In particular, plaintiff relies on section 4.4.5 of the 1985 personnel policy and its statement that, after a probationary period, a county employee can be terminated only for just cause. In the alternative, plaintiff argues that, even if the 1990 personnel ordinance could, in theory, have eliminated his right to just cause termination, it did not do that and, in any event, the Clatsop

---

[1] Plaintiff makes no claim that the Oregon Constitution required the county to follow certain procedures before terminating his employment.

County home rule charter preserved the just cause termination standard created by the 1985 personnel policy. Defendants argue that the county's 1990 enactment of personnel rules undid any effect of the 1985 personnel policy, that the 1990 ordinance and rules created in accordance with that ordinance do not provide for just cause as the standard for termination, and that the charter did not preserve the 1985 personnel policy.

■ County personnel rules may create implied terms in a county employee's employment contract. *Sheets v. Knight*, 308 Or 220, 235, 779 P2d 1000 (1989); *see also Yartzoff*, 281 Or at 656. The first aspect of the debate over what rules governed plaintiff's termination turns on whether the county's enactment of new personnel rules in 1990 governs plaintiff's employment contract.

■■ For the purposes of this discussion, we assume without deciding that, because of the 1985 personnel policy, plaintiff's employment contract included an implied term that provided that he could be terminated only for just cause. Absent such a term, the default standard for terminating a county employee or sheriff's deputy is "at will." *See* ORS 204.601; ORS 204.635; *Graves v. Arnado*, 307 Or 358, 362, 768 P2d 910 (1989). Generally, an employer cannot change contractual terms in an employee's employment contract to the detriment of the employee without providing consideration to the employee for the change. *McPhail v. Milwaukie Lumber Co.*, 165 Or App 596, 600-01, 999 P2d 1144 (2000). However, an "elected governing body of finite tenure which enter[s] into a contract involving a 'governmental' function [can]not bind a subsequently elected body." *Graves*, 307 Or at 364. Thus, where an elected body or officer makes "just cause" the termination standard for an employee who performs governmental functions, the "just cause" standard does not bind a subsequently elected body or officer because, even if that standard became part of the employment contract, the subsequently elected body or officer is not bound by the contract. *See id.*

■ An employee has an employment contract involving a governmental function, as that term is used in this context, if an elected board or officer directly supervises the employee,

the board or officer has the power to terminate the employee, and the employee makes discretionary decisions using authority delegated to the employee by the board or officer. *Id.* (a sheriff's adoption of just cause termination standard for deputies did not impair future sheriff's authority to fire deputies without cause because "[a] deputy sheriff who exercises the authority of an elected sheriff is involved in a governmental function"); *see also Miles v. City of Baker*, 152 Or 87, 93-94, 51 P2d 1047 (1935) (employment contract for auditor hired by city commissioners that allowed auditor to schedule work at his convenience and did not specify scope of audit work held unenforceable as to incoming commissioners); *Board of Klamath Cty. Comm. v. Select Cty. Employees*, 148 Or App 48, 53, 939 P2d 80, *rev den*, 326 Or 57 (1997) (past board's employment contract with county personnel director providing that manager could be terminated only for death, disability, or cause unenforceable against new board where contract required manager to exercise discretion). Thus, although an elected official who has authority to promulgate personnel rules can provide that county employees can be terminated only for just cause, *Graves*, 307 Or at 362-63, and although that provision may become part of an employee's contract with the county, *Sheets*, 308 Or at 235, where the employee's contract requires the employee to perform governmental functions, future officials may terminate such an employee's employment without establishing just cause for the termination. *See Graves*, 307 Or at 364.

Analyzing plaintiff's allegations under that framework, we first consider whether the record on summary judgment creates an issue about whether the Clatsop County Board of Commissioners is a governing body of finite tenure. We do so because, if at least a majority of board members had to stand for election at the same time between 1985 and 1999, then the board is a governing body of finite tenure and the 1985 board cannot have bound the 1999 board to contracts involving the performance of governmental functions. *Board of Klamath Cty. Comm.*, 148 Or App at 54-55. The record indicates that by 1994 at the latest, elections for three of the five county commission seats were held in the same election.[2]

---

[2] It does not matter if the newly elected governing body is composed of the same individuals as the outgoing body. We are concerned here with the office, not

Thus, the board is a governing body of finite tenure, and the county was not bound in 1999 by the 1985 personnel policy if plaintiff's employment with the county involved the performance of a governmental function.

We next consider whether, as jail commander, plaintiff performed a governmental function. Plaintiff was hired and supervised by the county sheriff, an elected official. The sheriff retained the power to terminate plaintiff. It is undisputed that the position of jail commander required plaintiff to act independently and to make discretionary decisions on the sheriff's behalf regarding jail personnel, jail inmates, and the general operation of the jail. Given those functions and the Supreme Court's conclusion in *Graves* that a sheriff's deputy exercising a sheriff's authority thereby performed a governmental function, we have little difficulty concluding that, as the jail commander, plaintiff performed a governmental function.

We next consider plaintiff's argument that, even if the county could ordinarily have altered the 1985 personnel rule regarding termination, the charter prohibited it from doing so. Plaintiff bases that argument on the continuity section of the charter. That section provided:

"(1)   The taking effect of this charter causes no break in the existence or legal status of the county.

"(2)   All rights, claims, causes of action, contracts, and legal and administrative proceedings of the county that exist just before the charter takes full effect continue unimpaired by the charter after it takes full effect. Each shall then be in the charge of the officer or agency designated by the charter or by its authority to have charge of it.

"(3)   All county legislation, orders, rules, and regulations that are in force just before this charter takes full effect remain in force after that time, insofar as consistent with the charter, without change until amended or repealed."

Clatsop County Charter § 32.

---

the officeholder. That is, the commitment made by one governing body is coincident with the term of the governing body and is not a personal commitment by the officeholder.

Plaintiff argues that the first sentence of section (2) fixes the just cause termination standard in place such that it could not be altered by the county. However, in context, that sentence does little more than indicate that the passage of the charter itself will not affect county contracts. Nothing in that section prevents the alteration of contracts after the charter was adopted. The sentence that follows the first sentence indicates that county contracts may be altered in the future by those in charge of them. Similarly, section (3) makes the same provision for the continuous effect of county legislation and rules after the adoption of the charter. In light of those provisions, we reject plaintiff's argument that the charter prohibited the county from firing him without just cause.

■ We turn to plaintiff's argument that, even if the county could have changed his status to that of an "at-will" employee, it did not do so. Plaintiff bases that argument on a section of the 1990 personnel ordinance that states, in part:

"Except as may be specifically provided for by statute or by contract with a recognized labor union, department heads and [certain listed types of employees] who continue to provide services to or for the County after the effective date of this ordinance shall serve at the will of the County Manager or his/her designee and shall have no right to continued employment by the County."

Plaintiff argues that, because he is not one of the listed types of employees, his employment continues to be controlled by the 1985 standard for dismissal. Defendants respond by arguing, among other things, that the 1990 ordinance and the policy manual created in response to the ordinance contain disclaimers that prevent any of the 1990 rules from giving rise to a property interest. Implicitly, defendants argue that the 1990 changes undid any effect of the 1985 personnel policy. The 1990 ordinance provides that "[n]o provision of this ordinance shall be deemed to have created any contractual or vested right in any employee or to limit the power of the Board of Commissioners to amend, modify or to repeal this ordinance[.]" Similarly, the personnel manual adopted under the 1990 ordinance provides:

"The County reserves the right to change these policies and procedures at any time. Nothing contained in these policies and procedures is intended to confer any property right in continued employment, [or] to constitute a contract of employment which cannot be changed by the County in its discretion.

"The employee and the County both reserve the right to end the employment relationship, with or without cause, at any time."

There is nothing ambiguous about the disclaimers. The disclaimers indicate that the ordinance and personnel rules do not give county employees any implied contract rights. Thus, given that the board was free to alter the terms of plaintiff's employment contract because his employment involved the performance of governmental functions, the disclaimers are sufficient to defeat plaintiff's claim that the 1990 ordinance and rules created an implied just cause term in his contract with Clatsop County. *See Mobley v. Manheim Services Corp.*, 133 Or App 89, 94-95, 889 P2d 1342, *rev den*, 321 Or 47 (1995); *Gilbert v. Tektronix, Inc.*, 112 Or App 34, 38-39, 827 P2d 919, *rev den*, 313 Or 299 (1992). Therefore, in 1999, plaintiff had no protected property interest in employment with the county based on county personnel rules and ordinances.

■ Plaintiff next argues that, even if personnel rules did not prohibit his termination without just cause, his 1983 settlement with the county did. Again, in relevant part, the 1983 settlement agreement provides that

"[plaintiff] will be reinstated into the full-time position of Emergency Services Coordinator effective on the date of this agreement and commencing service on December 1, 1983. This position will be placed into the Sheriff's Department Bargaining Unit.

"[Plaintiff] will be fully commissioned for this position and for any other position in the Clatsop County Sheriff's Office. Sheriff Almond Eastman, Clatsop County, AFSCME Council 75 and AFSCME Local Union No. 2746 consent and agree to the placement of the position in the Sheriff's Office Unit for all collective bargaining purposes. * * * [Plaintiff] will be accorded all the rights of a bargaining unit employee. The County and/or the Sheriff's Department

shall retain the right to modify the job description attached hereto but any modification shall be done in good faith in accordance with applicable law and not for the purposes of circumventing this settlement agreement."

Plaintiff argues that, by its terms, the agreement provided that he could be terminated only for just cause even if he later worked in a nonunion management position. He also contends that members of the Clatsop County government repeatedly indicated to him and each other that the agreement continued to have effect after plaintiff became the jail commander and provided that he could be terminated only for just cause. Defendants respond that the 1983 agreement was not a contract for permanent employment. They argue that the language relied on by plaintiff is unambiguous and does not provide for just cause termination or otherwise guarantee permanent employment. Defendants argue that, because that language is unambiguous, we should not consider the post-agreement statements that, plaintiff argues, inform the meaning of the agreement.

■■■■ A written settlement agreement is subject to the ordinary rules of contract interpretation. *Ziebert v. Sun Valley Lumber, Inc.*, 198 Or App 162, 168, 107 P3d 668, *rev den*, 339 Or 66 (2005). Thus, we first consider the meaning of the provision on which plaintiff relies to determine whether it is unambiguous as a matter of law. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997). A contract is unambiguous if its meaning is so clear as to preclude doubt by a reasonable person. *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 317, 696 P2d 1096, *rev den*, 299 Or 314 (1985). In determining whether a contractual term is ambiguous, a court may consider evidence of the circumstances underlying the formation of the contract. ORS 42.220; *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 317, 129 P3d 773 (2006).

Given that the statements on which plaintiff relies were made *after* the agreement, they are not evidence of the circumstances underlying the formation of the contract and, thus, have no bearing on whether the agreement is ambiguous. Plaintiff does not present any other extrinsic evidence that supports his argued interpretation of the agreement. The text relied on by plaintiff does not speak to a termination

standard. Rather, it provides for plaintiff's reinstatement as emergency services coordinator, a union position. It confirms that, because plaintiff is being reinstated to a union position, he will have all the rights of a union member. A reasonable person could not interpret the language on which plaintiff relies to establish anything other than that plaintiff was to be reinstated with certain benefits. Therefore, the trial court did not err in concluding that the 1983 agreement did not create an issue of fact about whether plaintiff could be terminated only for just cause. Because neither the agreement nor the applicable personnel rules alter the default standards contained in ORS 204.601 and ORS 204.635, in 1999, plaintiff was an "at will" employee.

■■■■■ Plaintiff also argues that the trial court erred in concluding that there are no issues of material fact regarding his 42 USC section 1983 claim alleging that the termination of plaintiff's employment was in retaliation for his exercise of his First Amendment rights. In order to establish a *prima facie* case of retaliation by a governmental employer in violation of the First Amendment, a public employee is required to establish that (1) the employee spoke on a matter of public concern and (2) that the speech was a substantial or motivating factor for an adverse employment action against him by his public employer. *Board of Commrs., Wabaunsee Cty. v. Umbehr*, 518 US 668, 675, 116 S Ct 2342, 135 L Ed 2d 843 (1996). Once a plaintiff makes that showing, governmental defendants can nonetheless avoid liability if they demonstrate either that: (1) under the balancing test established by *Pickering v. Board of Education*, 391 US 563, 568, 88 S Ct 1731, 20 L Ed 2d 811 (1968), legitimate administrative interests in efficiency and avoiding workplace disruption outweigh the plaintiff's free speech interests; or (2) under the mixed motives analysis of *Mt. Healthy City Board of Ed. v. Doyle*, 429 US 274, 287, 97 S Ct 568, 50 L Ed 2d 471 (1977), the plaintiff's speech did not affect their actions. Here, defendants moved for summary judgment on the ground that there was no issue of fact about whether plaintiff was terminated because of his speech and, hence, that defendants were entitled to judgment as a matter of law. On appeal, they renew that argument in response to plaintiff's contention that the record shows that there is an issue of fact about whether he

was terminated because of his speech. Defendants also now argue that, under *Pickering*, it is undisputed that their legitimate administrative interests outweighed plaintiff's free speech interests.

Plaintiff bases his argument on appeal on two categories of circumstantial evidence that the Ninth Circuit has held may be sufficient to create a triable issue of fact about whether an adverse employment action was retaliatory: (1) proximity in time between plaintiff's expressive conduct and the allegedly retaliatory actions, such that a jury logically could infer that defendants' action was retaliatory, and (2) evidence that defendants expressed opposition to his speech, either to him or to others. *See Keyser v. Sacramento City Unified School Dist.*, 265 F3d 741, 751-52 (9th Cir 2001). We have not adopted the Ninth Circuit's approach to analyzing whether circumstantial evidence is sufficient to establish a *prima facie* First Amendment-based section 1983 claim. We consider whether, were we to adopt the Ninth Circuit's approach, we would conclude that the record precluded summary judgment on plaintiff's section 1983 claim.

Plaintiff claims that statements that he made regarding a restitution center, the misappropriation of county funds, and the elimination of the position of county manager were factors in his termination. Plaintiff's statements regarding the restitution center occurred throughout the eight years preceding his termination. He made statements regarding the misappropriation of county funds 13 to 14 months before his termination, and his statements regarding the elimination of the position of county manager occurred after his termination but sometime before the county manager affirmed his termination.

Plaintiff stated in an affidavit that he submitted in opposition to defendants' summary judgment motion:

"Since approximately 1992, I publicly have supported the concept of a 'Restitution Center' as part of the Criminal Justice System. As time went on I believed that a Restitution Center would be more cost effective and efficient than a new jail. I consistently voiced this opinion to County Manager Ferguson and Sheriff Raichl. County Manager

Ferguson and Sheriff Raichl both informed me that they wanted a new jail as opposed to a restitution center.

"* * * In approximately June of 1998, I learned that County Manager Britt Ferguson had authorized the misappropriation of approximately $135,000 in State Community Corrections Funds. I reported this information to Clatsop County's District Attorney Josh Marquis. An investigation resulted in the repayment of approximately $70,000 to the State of Oregon. This and my involvement was reported in the local paper. Defendant Raichl, Britt Ferguson and other county officials were made aware of this speech. In the Spring of 2000, I participated in supporting ballot measures for changes in the Clatsop County Home Rule Charter. This included Measure 4-71, which would have eliminated the position of county manager then held by Britt Ferguson. This included campaign contributions that were reported in the local newspaper. This was also prior to the conclusion of my hearing before Britt Ferguson as the hearing officer."

Plaintiff argues that his affidavit is sufficient to create issues of fact about whether he was terminated because of his statements regarding the restitution center, the misappropriation of county funds, and the elimination of the position of county manager.

We first consider the timing of the termination of plaintiff's employment in relation to plaintiff's assertedly protected statements. The Ninth Circuit has explained that, although the timing of speech is useful in determining whether there is circumstantial evidence that would permit a reasonable factfinder to conclude that an employer retaliated against an employee's protected speech, the timing of the speech alone cannot support an inference of retaliation without additional evidence of the surrounding circumstances that supports such an inference. *Coszalter v. City of Salem*, 320 F3d 968, 978 (9th Cir 2003). Indeed,

"[t]here is no set time beyond which acts cannot support an inference of retaliation, and there is no set time within which acts necessarily support an inference of retaliation. Whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in light of the timing and the surrounding circumstances. In some cases, the totality of the facts may form such a clear picture

that a [court is] justified in granting summary judgment, either for or against a plaintiff, on the issue of retaliatory motive; but the length of time, considered without regard to its factual setting, is not enough by itself to justify a grant of summary judgment."

*Id.*; *see also Clark County School Dist. v. Breeden*, 532 US 268, 273-74, 121 S Ct 1508, 149 L Ed 2d 509 (2001) (action taken 20 months after protected activity, by itself, does not support an inference of retaliation).

Plaintiff's affidavit indicates that he had had an ongoing debate with Raichl and Ferguson about the restitution center for eight years before he was terminated. Although some of the defendants disagreed with plaintiff's belief that a restitution center was a better use of funds than a new jail, plaintiff offers no explanation or evidence for why, after eight years of disagreement, defendants decided to retaliate against that speech. Plaintiff's allegation that Raichl and Ferguson told him that they wanted a new jail rather than a restitution center does not indicate that they opposed plaintiff's speech. Rather, it indicates that they were aware of his speech and disagreed with it. Without additional evidence, there is nothing to suggest that defendants retaliated against plaintiff because of his statements about the restitution center. We therefore reject his assertion that there is an issue of material fact about whether his termination was motivated by a desire to retaliate against that speech.

Plaintiff argues that the temporal proximity between his statements about the misappropriation of county funds and his termination is sufficient to create an issue of fact about whether those statements were a substantial or motivating factor in his termination. At least 13 months elapsed between his statements on misappropriation and his termination. That timing, without more, is insufficient to create an issue of fact about defendants' motivation.

Plaintiff also contends that his affidavit creates an issue of fact about whether defendants expressed opposition to his statements on the misappropriation of funds. We disagree. At best, his affidavit indicates that he criticized defendants, and defendants were aware of his criticism. The fact that a governmental employer is aware of employee speech

criticizing the employer does not suggest that the employer was motivated by that criticism to take an adverse employment action against the employee. *Umbehr*, 518 US at 685. Therefore, a reasonable juror could not conclude from that evidence that defendants retaliated against plaintiff for his statements about the misappropriation of funds.

Plaintiff also argues that his support for eliminating the position of county manager creates an issue of fact about whether the county manager retaliated against him for his speech. In effect, plaintiff argues that, had he not supported a charter amendment that would have eliminated the county manager's position, the county manager would not have affirmed Raichl's decision to terminate plaintiff's employment. Although he asserts that his statements in support of the charter amendment occurred after his termination but before the county manager affirmed his termination at a hearing, the record does not contain any evidence about the length of the interval between plaintiff's statements about the charter and the termination hearing. Although the termination hearing must have occurred before plaintiff brought this action, that does not place the statements close enough in time to give rise to an inference of retaliation based on the timing of the speech alone. Similarly, the record does not contain any evidence that defendants expressed any opposition to plaintiff's statement about the proposed charter amendment. For the above reasons, even if we were to adopt the Ninth Circuit's approach, we would not find that there is an issue of material fact about whether defendants retaliated against plaintiff's speech by terminating his employment.

Affirmed.