Argued and submitted July 11, 2005, judgment in A122867 and A123337 reversed
and remanded; judgment in A122915 affirmed March 15, 2006

PEACE RIVER SEED CO-OP, LTD.,
*Respondent,*

*v.*

PROSEEDS MARKETING, INC.,
*Appellant.*

03C15778; A122867 (Control), A123337

CASCADE INTERNATIONAL SEED COMPANY,
an Oregon corporation,
and Jonathan Green and Sons, Inc.,
a New Jersey corporation,
*Respondents,*

*v.*

PROSEEDS MARKETING, INC.,
*Appellant.*

01C-14396; A122915
(Cases Consolidated)

132 P3d 31

J. Michael Alexander argued the cause for appellant. With him on the briefs was Swanson, Lathen, Alexander & McCann, PC.

Michael B. Brink argued the cause for respondent Peace River Seed Co-Op, Ltd. With him on the brief were Joel D. Kalberer and Weatherford, Thompson, Cowgill, Black & Schultz P.C.

Arthur Bergman argued the cause for respondents Cascade International Seed Companyand Jonathan Green and Sons, Inc. On the brief were Peter L. Barnhisel and Barnhisel, Willis, Barlow & Stephens PC.

Michael B. Brink, Joel D. Kalberer, and Weatherford, Thompson, Cowgill, Black & Schultz P.C. filed the brief *amicus curiae* for respondent Peace River Seed Co-Op, Ltd.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

## BREWER, C. J.

■ In these consolidated cases, Proseeds Marketing, Inc. (Proseeds), appeals from judgments of the circuit court that, in one action, enforced an arbitration award in favor of Peace River Seed Co-Op, Ltd., an Alberta, Canada, corporation (the Peace River case), and, in the other, set aside a judgment enforcing an arbitration award in favor of Proseeds against a domestic corporation, Cascade International Seed Company (the Cascade case). In each case, the parties in their contracts had adopted the same rules concerning arbitration of the same trade association. In each case, the losing party sought a trial *de novo* after arbitration. In the Peace River case, the circuit court rejected the request, and in the Cascade case, the circuit court allowed it. The trial court decisions are, thus, inconsistent. The issue on appeal is the availability of a trial *de novo*. We hold that the arbitration rules—and, thus, the parties' contracts—provide the option of a trial *de novo*. We therefore reverse in the Peace River case and affirm in the Cascade case.[1]

We summarize the procedural history of both cases. We begin with and primarily focus on the Peace River case, because it raises issues in addition to those that the Cascade case raises, and our analysis of the contractual interpretation issue in the Peace River case effectively determines the outcome of the Cascade case. The parties are involved in the grass seed industry. In 1999, Proseeds agreed to purchase grass seed from Peace River for the 2000 and 2001 crop years. The price for seed later fell, and the parties disagreed on the quantity of seed that the contract required Proseeds to purchase. They eventually submitted that dispute to arbitration, resulting in a substantial award in favor of Peace River.

---

[1] There is a jurisdictional question in the Cascade case. After Cascade filed a civil action against Proseeds, the trial court, on Proseeds' motion, ordered arbitration. After the arbitration, the court entered judgment on the award in favor of Proseeds. It then set the judgment aside and restored the case to the active caseload. Proseeds appeals from the order setting the judgment aside. Although an order refusing to enter judgment on an arbitration award is not appealable, *see Cessna v. Chu-R & T, Inc.*, 185 Or App 39, 57 P3d 936 (2002), *rev den*, 335 Or 266 (2003), the order in this case that set the judgment aside was akin to an order awarding a new trial and is appealable as an "order made in the action after a general judgment is entered and that affects a substantial right[.]" ORS 19.205(3).

The arbitrator rendered his award on April 15, 2003. On April 16, an American Arbitration Association (AAA) representative sent the award to the parties by fax. On June 20, Peace River filed a proof of delivery of the award in the circuit court. On July 17, it filed a proposed money judgment based on the award. The same day, Proceeds filed an objection to the arbitration award, arguing that the award was not binding[2] because the parties' agreement allowed the losing party to resubmit the controversy to a court. As part of that argument, Proceeds sought leave to file a declaratory judgment proceeding to determine the parties' obligations. On July 22, the trial court entered judgment on the award without referring to Proceeds' arguments. Proceeds moved under ORCP 71 to set the judgment aside, and the court entered an order doing so on August 6. On August 8, Peace River, apparently unaware of that action, filed a memorandum in opposition to Proceeds' motion to set the judgment aside. After discovering Peace River's opposition, the court held a hearing at which the primary issue was whether the arbitration award was binding. The court concluded that the award was binding and again entered judgment. Proceeds has appealed.

In the companion case, Cascade sought damages in the form of seed royalties from Proceeds. Proceeds asserted various counterclaims. As required by the parties' agreement, the trial court abated the action for arbitration. As in the Peace River case, the bylaws of the American Seed Trade Association (A.S.T.A.) governed the arbitration provisions of the agreement. In June 2003, the arbitrator issued a net award on the parties' various claims in favor of Proceeds. Proceeds applied to the trial court for entry of judgment on the award, and, in August 2003, the court entered judgment on the award. Cascade then filed objections to the judgment and a motion for a trial *de novo*. In the motion, Cascade argued that the A.S.T.A. bylaws (the bylaws) preserved the parties' right to seek a trial *de novo* before a court having jurisdiction of their dispute. The trial court granted

---

[2] As do the parties, we use the term "binding" in this opinion to mean that the award is not subject to further appeal or to a trial *de novo*. As we discuss below, we conclude that the parties' agreement provided for arbitration that was final and enforceable unless a party sought a trial *de novo* in court. That is different from an agreement for what we call "binding" arbitration.

Cascade's motion, set aside the judgment, and returned the case to its trial calendar. Proceeds appealed.

Although these cases primarily involve identical issues of contractual interpretation, a brief discussion of the statutory framework that applies to the agreement between Peace River and Proseeds will assist in understanding some of the issues on appeal in that case. Peace River is a Canadian corporation, and the court acted under the Oregon International Commercial Arbitration and Conciliation Act (OICACA), ORS 36.450 to 36.558, when it enforced the arbitration award. However, because the arbitration occurred outside of Oregon, only ORS 36.468, ORS 36.470, ORS 36.522, and ORS 36.524 apply to this case. ORS 36.454(2). ORS 36.522 and ORS 36.524 are the pertinent statutes. ORS 36.522(1) provides that Oregon courts shall recognize an international arbitral award as binding and shall enforce it. The party seeking enforcement must first file both the award and the agreement to arbitrate with the court. ORS 36.522(2). Unless the opposing party files an application to set the award aside within the period provided in ORS 36.520(3), which, in this case, is three months after the party received the award, the court must enter judgment on it, and the award will become enforceable by judicial process. ORS 36.522(3).[3] ORS 36.524 sets out only limited grounds for refusing to enforce the award, all of which relate to the validity of the arbitration agreement, the procedural validity and finality of the award, or the public policy of the state.[4] None contemplates the possibility of a trial *de novo* after the entry

---

[3] There is an anomaly in the statutes as applied to this case. ORS 36.522(3) provides for enforcement of the award if no party files an application to set it aside "as provided in ORS 36.520 within the time specified in ORS 36.520(3)[.]" However, ORS 36.520 does not apply to this case because the arbitration did not occur in Oregon. ORS 36.454(2). There is no other statutory provision for a party to file a formal objection to the award. ORS 36.522(3) thus appears to adopt the requirements of ORS 36.520 despite the express statutory provision that they do not apply.

[4] The specific grounds for refusing enforcement of an award are incapacity of a party or invalidity of the arbitration agreement, ORS 36.524(1)(a)(A); inadequate notice or other inability to present the party's case, ORS 36.524(1)(a)(B); the award deals with issues beyond the scope of the arbitration agreement, ORS 36.524(1)(a)(C); improper composition of the arbitral tribunal, ORS 36.524(1)(a)(D); the award is not yet binding or has been suspended by action of an appropriate court, ORS 36.524(1)(a)(E); the subject matter of the dispute is not subject to arbitration under Oregon or United States law, ORS 36.524(1)(b)(A); and enforcement would be contrary to Oregon public policy, ORS 36.524(1)(b)(B).

of the award. Rather, if the award is not invalid for one of the statutory reasons, the court must enforce it.[5]

With the foregoing statutory context in mind, we determine the nature of the arbitration to which the parties in the Peace River case agreed. Their agreement is contained in the contract of sale, which provides: "RULES: NORAM-SEED ARBITRATION: A.S.T.A." The parties agree that NORAMSEED refers to rules that the American and Canadian Seed Trade Associations jointly adopted effective October 1, 1991 (the rules), and that A.S.T.A. refers to the A.S.T.A. bylaws. The contract, thus, adopted the NORAM-SEED rules for general contract performance and the A.S.T.A. bylaws for the arbitration of disputes.[6] We begin with the bylaws.

Article XVI, section 1, of the bylaws provides that, when firms in the seed industry agree to resolve their disputes by arbitration under the A.S.T.A.'s auspices, the arbitration shall occur in accordance with the bylaws. Section 2.A. then provides:

> "Any controversy or claim between firms located in the United States and/or Canada, whether or not they are members of this association, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association as in effect on September 1, 1988, or as thereafter amended. These Rules are adopted as the Arbitration Rules for the American Seed Trade Association in their entirety with the exception that, unless otherwise specified by agreement of the parties, oral hearings shall be waived and all disputes shall be submitted in writing in accordance with and in the manner prescribed by said Rules."

---

[5] The OICACA does not apply to the Cascade case because both Cascade and Proseeds are Oregon corporations, nor does the Oregon Uniform Arbitration Act, ORS 36.600 to 36.740 (OUAA), enacted after Proseeds and Cascade entered into their agreement and after their dispute arose, *see* Or Laws 2003, ch 598, § 31. Instead, the Oregon Arbitration Act (OAA), ORS 36.300 to 36.365 (2001), applied to that case. Because the parties to that case have made no argument concerning any effect of the OAA on their agreement, we do not consider it.

[6] The contract in the Cascade case contains a similar provision with identical effect.

Section 3 of the bylaws expands on that statement by providing that, when parties agree to arbitration under section 1, in all transactions covered under section 2.A. (including the contracts at issue in these cases) the "trading rules known as 'NORAMSEED TRADE RULES AND USAGES,' as adopted March 1, 1978, thereafter amended on 10/1/91, shall apply unless exceptions thereto are specified in writing by the parties concerned." The contract does not contain any exceptions.

The A.S.T.A. bylaws thus expressly adopt the NORAMSEED rules concerning arbitration. Rule XVI covers the arbitration of disputes. Section 1.a. provides that, with limited exceptions, every difference that cannot be amicably resolved arising from a contract under the rules "shall *first* be decided by arbitration *before it can be submitted to a court of law*." (Emphasis added.) Section 5 provides that "[t]he AAA Rules do not provide for an appeal. Therefore, the decision by an AAA Arbitration is final. *However, it does not exclude the right of a party to resubmit the case to a competent court of law after the decision has been rendered by the AAA*." (Emphasis added.) The parties' contract, thus, provides for arbitration in accordance with the Commercial Arbitration Rules of the AAA, subject to modifications in the A.S.T.A. bylaws and NORAMSEED rules. Article XVI, section 2.A., of the bylaws expressly modifies the AAA rules by providing that the parties will ordinarily waive their right to an oral hearing and will submit their disputes in writing. The arbitration in the Peace River case followed that modified procedure, with the parties submitting their arguments to an arbitrator in Seattle, Washington. The issue on appeal is whether NORAMSEED's Rule XVI, which the bylaws adopt by reference, also modified the usual provision that AAA arbitration is binding and provided instead for a court trial *de novo* at one party's request.

 The question before us involves the construction of a contract. We have recently described our review of a trial court's decision concerning the meaning of a contract:

> "We review the trial court's interpretation of the contract for errors of law, employing the procedure set forth in *Yogman v. Parrott*, 325 Or 358, 937 P2d 1019 (1997). We

first examine the text and context of the contract as a whole in order to determine whether the * * * provision is ambiguous. *Id*. at 361. If the provision is clear, our analysis ends, but if there is ambiguity we discern the parties' intent aided by evidence external to the contract and, if necessary, we employ appropriate maxims of construction. *Id*. at 362-63."

*Industra / Matrix Joint Venture v. Pope & Talbot*, 200 Or App 248, 254-55, 113 P3d 961, *rev allowed*, 339 Or 609 (2005). The terms of a contract are ambiguous if they are capable of more than one sensible and reasonable interpretation. *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 317, *rev den*, 299 Or 314 (1985). Whether they are ambiguous is a question of law. *Yogman*, 325 Or at 361; *see also Ziebert v. Sun Valley Lumber, Inc.*, 198 Or App 162, 168, 107 P3d 668, *rev den*, 339 Or 66 (2005). With that understanding, we consider the provisions in question.

█ The provisions at issue are Rule XVI, section 1, which requires that a dispute "first be decided by arbitration before it can be submitted to a court of law" and Rule XVI, section 5. Section 1 indicates that a party may submit a case to a court after the arbitration has concluded. Section 5 makes that suggestion explicit. That section has three sentences. The first two state that the AAA rules do not provide for an appeal and that, therefore, "the decision by an AAA Arbitration is final." By themselves those statements appear to adopt the usual rule that arbitration is binding. The third sentence then modifies the previous two: "However, [AAA Arbitration] does not exclude the right of a party to resubmit the case to a competent court of law after the decision has been rendered by the AAA." Proseeds argues that those statements together contemplate further judicial proceedings after the arbitration award and that section 5 contemplates a trial *de novo*. Peace River argues that arbitration is normally binding, that the AAA rules contemplate binding arbitration, and that the provisions in question refer only to submitting an arbitration award to a court for enforcement. We agree with Proseeds.

The meaning of the third sentence is unambiguous. It is introduced by "however," which, in this context, means "in spite of that : on the other hand[.]" *Webster's Third New Int'l Dictionary* 1097 (unabridged ed 2002). "However," thus,

indicates that the third sentence will modify or state an exception to the first two. The sentence then provides that the finality of the AAA arbitration "does not exclude the right" of a party to "resubmit the case to a competent court" after the arbitration has concluded. It thereby recognizes a right to "resubmit the case[.]" To "submit" a case means "to send or commit [the case] for consideration, study, or decision[.]" *Id.* at 2277. "Re" as a prefix means "again : anew[.]" *Id.* at 1888. Thus the right to resubmit the case to a competent court means the right to commit the case to that court for a decision anew. That is, arbitration will be final and binding unless a party seeks a trial *de novo*. Although the arbitration award will remain the final result of the arbitral proceeding, at that point it will cease to be binding. In the context of the contract as a whole, there is no other sensible and reasonable interpretation of section 5.

Although not dispositive, it is worth noting that this understanding of "resubmit" is consistent with the way that the Oregon appellate courts use the word. Thus, ORAP 7.15(3) provides that, when the court denies a motion, other than a challenge to the court's jurisdiction, before submission of the case, "the motion may not be resubmitted without leave of the court in the order on the motion." The purpose of resubmission under that rule is to obtain a second decision on the merits of the motion. In addition, whenever this court takes a case en banc, we state on the cover page of the decision the date when the case was "resubmitted." *See, e.g., State v. Schneider*, 201 Or App 546, 120 P3d 16 (2005). We conclude that section 5 provides that, once the arbitration is final it will be binding unless a party seeks a trial *de novo*. Proceeds did so when it sought leave to file a declaratory judgment action.

Peace River argues that section 5 simply recognizes the right of the winning party to submit the case to a court for enforcement. It points out that AAA rules provide for binding arbitration and the entry of judgment on the award, that the relevant statutes do not provide for a new trial, that case law presumes that AAA arbitration is binding, and that international treaties provide for submission of the award to a competent court for enforcement. Those arguments go beyond the

words of the contract; once we have concluded that the provision is clear in the context of the contract as a whole, our analysis ends. *See Yogman*, 325 Or at 361. In any case, the treaties that Peace River cites do not use the word "submit" but rather provide for "recognition" of the arbitral award, a concept that, unlike "submit," does not suggest a new consideration of the merits. Whether or not Peace River is correct that the AAA rules, the arbitration statutes, and case law contemplate and are designed for binding arbitration, they do not impose it when the parties have contracted for something different.

■ Peace River also makes two procedural arguments. First, it argues that Proseeds is judicially estopped to deny that the arbitration is binding because one of its officers, in an affidavit supporting a motion to require arbitration in the Cascade case, stated that the rules called for mandatory arbitration. However, the officer did not state that the arbitration was binding but only that it was mandatory. Mandatory arbitration is consistent with the right to a trial *de novo* once the arbitration is complete and may well be a condition precedent to such a trial. There was no estoppel.

■ Peace River's second argument is that Proseeds filed its objections three months and one day after it received the arbitration award and, thus, the objections were untimely under ORS 36.520(3) and ORS 36.522(3). The difficulty is that Proseeds does not object to the validity of the arbitration award or seek to set it aside as invalid; it seeks a trial *de novo* despite that award, something that the statutes do not address. Proseeds' objection was, in essence, to the entry of judgment on a valid and final award. ORS 36.524, however, does not address a court's authority to refuse to recognize and enforce an award on the ground that the objecting party is entitled to a trial *de novo*. The statutes are not designed for an arbitration agreement that contemplates an award that may not be binding. Because the statutory procedures do not provide a method for Proseeds to seek a trial *de novo,* they perforce do not provide the time limits for doing so.[7]

---

[7] We do not need to describe in this case the appropriate methods for achieving the result that the parties intended. However, we note that, in the Cascade case, the court first entered judgment on the arbitration award and then set the judgment aside when Cascade indicated its intent to proceed with a trial *de novo*.

For these reasons we conclude that the trial court erred in the Peace River case in reentering judgment after setting aside the original judgment on the arbitration award. Because the pertinent arbitration provision in the Cascade case is identical to the dispositive provision in the Peace River case, for the same reasons we conclude that the trial court correctly set aside the original judgment in the Cascade case.

Judgment in A122867 and A123337 reversed and remanded; judgment in A122915 affirmed.