No. 429		May 14, 2025		501

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Daniel B. TRAINOR,
*Plaintiff-Appellant,*

*v.*

VIGOR MARINE, LLC,
an Oregon limited liability company,
*Defendant-Respondent.*

Multnomah County Circuit Court
20CV20705; A178760

Adrian L. Brown, Judge.

Argued and submitted May 29, 2024.

Charles Robinowitz argued the cause for appellant. Also on the briefs was the Law Office of Charles Robinowitz.

Laura E. Rosenbaum argued the cause for respondent. Also on the brief was Ryan S. Kunkel and Stoel Rives LLP.

Before Shorr, Presiding Judge, Pagán, Judge, and O'Connor, Judge.*

PAGÁN, J.

Affirmed.

_____
* O'Connor, Judge vice Mooney, Senior Judge

**PAGÁN, J.**

Plaintiff appeals from a judgment of dismissal after the trial court granted summary judgment against his claim that defendant, Vigor Marine, LLC, wrongfully discharged him in retaliation for testifying against defendant in a separate discrimination case in violation of ORS 659A.230(1). Plaintiff raises two assignments of error contending that the trial court (1) abused its discretion in holding that plaintiff was judicially estopped from pursuing his claim for wrongful discharge, and (2) erred by granting defendant's motion for summary judgment finding no genuine issue of material fact that defendant had fired plaintiff in retaliation for testifying against defendant. We conclude that the trial court did not err in granting summary judgment, and we affirm.[1]

Under ORCP 47 C, summary judgment is appropriate when:

> "[T]he pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law. *** The adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial."

That standard is met when "no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." *Id.*

On appeal from a trial court's grant of summary judgment, we review for errors of law and we "will affirm if there are no genuine disputes about any material fact and the moving party is entitled to judgment as a matter of law." *Beneficial Oregon, Inc. v. Bivins*, 313 Or App 275, 277, 496 P3d 1104 (2021). "In so doing, we view the facts in the light most favorable to the nonmoving part[y]," and we "examine whether no objectively reasonable juror could find in their

---

[1] Because we conclude that the trial court did not err in determining that no reasonable juror could find in plaintiff's favor on the retaliation claim, and therefore appropriately granted defendant's motion for summary judgment, we need not reach plaintiff's first assignment of error regarding judicial estoppel as it relates to bankruptcy proceedings.

favor on the question at issue." *Id*. With that standard in mind, we recite the following facts in the light most favorable to plaintiff as the nonmoving party.

FACTS

Defendant performs vessel repair and construction at its shipyard on Swan Island in Portland, Oregon. Depending on the number of ships in the shipyard, defendant employs approximately 300 to 800 people at any given time. Layoffs and rehires occur frequently. Plaintiff worked as an on-again, off-again marine painter for defendant from January 2009 until his termination in August 2019. Plaintiff's work focused on cleaning, blasting, and painting large industrial vessels, such as cruise ships and Navy boats.

Before July 2018, plaintiff received one minor violation of workplace rules and received two suspensions for insubordination. In late July 2018, plaintiff testified for a fellow employee in support of her discrimination case against defendant. At the time of the trial, plaintiff was not employed by defendant and was working elsewhere. However, a few weeks after plaintiff testified, defendant rehired plaintiff and he returned to the same role and the same rate of pay he had prior to his testimony.

In June 2019, plaintiff used two blast hoses[2] simultaneously and posted a photo of it on Facebook, referring to himself as "Superman, well at least Rambo." Plaintiff's "Rambo" photo was reported to defendant's management. Defendant investigated the incident and plaintiff admitted to using two blast hoses at the same time. According to defendant, using two blast hoses at once is dangerous and is not standard practice.

Two days after plaintiff used two blast hoses simultaneously, plaintiff was instructed to clean the side of a U.S. Navy ship. While doing so, he used his blast hose to draw a picture of a skull and crossbones on the side of the naval ship. According to defendant, plaintiff's action could have reflected "poorly on [defendant] should a naval officer see [plaintiff] blasting a skull design on the naval ship" and was

---

[2] Blast hoses remove paint and protective coatings from ships by blasting abrasive material, not water, with extreme force.

an "inefficient use of work time" that violated defendant's policy to "be productive at all times" and do a "full day's work for a full day's pay."

After those instances of misconduct, defendant considered terminating plaintiff's employment, but plaintiff's union representative persuaded defendant to place plaintiff on a Last Chance Agreement. The Last Chance Agreement listed plaintiff's corrective action history over the prior 16 months, including the insubordination that led to discipline in February and March 2018, and stated that, despite such history and repeated violations of defendant's policy, defendant was "willing to offer [plaintiff] an opportunity to enter into [the Last Chance Agreement] as a condition to return to work for the Company." The Last Chance Agreement's conditions included that "[a]ny violation of the Vigor Code, the Employee Handbook, any other policies/procedures or work instructions will result in termination of [plaintiff's] employment." Plaintiff was advised by his union regarding the terms of the agreement before he signed it. He stated that he understood that further violations of policies, procedures, or work instructions would lead to the end of his employment.

Two months after signing his Last Chance Agreement, on August 20, 2019, plaintiff's line supervisor instructed him to clean sand off of a dock because some guests were coming to the shipyard and defendant wanted a clean dock so they would not walk around in the sand. Pursuant to defendant's safety protocols, plaintiff's supervisor, Nowick, completed a Job Hazard Assessment (JHA) for the project and identified fire hoses—similar to fire hoses used by firefighters—as the required equipment. Plaintiff signed the JHA and stated that he understood that if circumstances changed, the expectation was that he was to "pause and ask that the JHA be modified" to reflect the circumstances as appropriate.

However, rather than use a fire hose, plaintiff used a pressure washer. Plaintiff testified in his deposition:

"Q:   After Mr. Nowick gave you the instruction to clean the [dock] with the fire hose, you went and used a pressure washer to do the job instead. Is that correct?

"A:  Yes.

"Q:  That was contrary to Mr. Nowick's instructions. Correct?

"A:  Yes.

"Q:  And there's no mention of a pressure washer on the Job Hazard Analysis, because it wasn't the tool that was planned for the work that day. Correct?

"A:  It's not on the JHA, so yes."

Defendant investigated the incident and concluded that plaintiff had violated his Last Chance Agreement because he had failed to follow his supervisor's instructions. Defendant terminated plaintiff's employment in August 2019 and plaintiff filed this suit.

In February 2022, the trial court granted defendant's motion for summary judgment on the merits of plaintiff's claim. The court concluded that plaintiff offered no evidence to support a genuine issue of material fact that defendant fired him in retaliation for his testimony in the 2018 discrimination case. Following the order granting summary judgment, the trial court entered a judgment of dismissal with prejudice.

## ANALYSIS

On appeal, plaintiff raises two assignments of error, contending that the trial court erred when it granted defendant's summary judgment motion. We address the second assignment because it is dispositive.

In plaintiff's second assignment of error, he argues that the trial court erred in concluding that his termination was not unlawfully motivated by his civil testimony. Specifically, plaintiff contends that he proved a *prima facie* case of discrimination against defendant in violation of ORS 659A.230(1) because he "testified against the defendant in another discrimination case, *** defendant began disciplining him within nine months of his testimony and fired him within 13 months. A jury could infer causation from [those] *** facts."

Plaintiff argues that defendant violated the protective statute, ORS 659A.230(1), which provides, in part:

> "It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee * * * for the reason that the employee has * * * testified in good faith at civil proceeding[.]"

To succeed on a wrongful discharge claim under ORS 659A.230(1), plaintiff must establish that the protected activity he engaged in was a substantial factor in the decision to terminate his employment. *See Ossanna v. Nike, Inc.*, 290 Or App 16, 28, 415 P3d 55 (2018), *aff'd*, 365 Or 196, 445 P3d 281 (2019) (noting previous cases in employment-retaliation context that required proof that the employee's protected activity was a substantial factor in the employer's adverse decision); *see also Estes v. Lewis and Clark College*, 152 Or App 372, 381, 954 P2d 792, *rev den*, 327 Or 583 (1998) (articulating the same requirement for common-law wrongful-discharge claim). "[T]o be a substantial factor, the employer's wrongful purpose must have been a factor that made a difference in the discharge decision." *Estes,* 152 Or App at 381.

Proof of a causal connection between protected conduct and a materially adverse action can be established (1) "*indirectly*, by showing that the protected activity was followed closely by discriminatory treatment or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct" or (2) "*directly*, through evidence of retaliatory animus directed against a plaintiff by the defendant." *Boynton-Burns v. University of Oregon*, 197 Or App 373, 380, 105 P3d 893 (2005) (emphases in original; internal quotation marks omitted).

The question here turns on whether the record, viewed in the light most favorable to plaintiff, would permit an objectively reasonable juror to find the necessary causal link between plaintiff's discharge and his protected activity. Plaintiff argues that the record permits the inference that plaintiff testifying against defendant as the principal witness in the 2018 discrimination case was a substantial factor in defendant firing plaintiff 13 months later. To support

that argument, plaintiff further contends that "[f]or each of [defendant's] reasons for disciplining and eventually firing [plaintiff], he had evidence of other workers * * * who had not testified against [defendant] who committed the same 'violations' and received no discipline."

Although different treatment of similarly situated coworkers can, in some circumstances, raise an inference of unlawful motivation, the coworkers must be similarly situated in a material sense. *See Miller v. Racing Commission*, 298 Or App 70, 90, 93-94, 445 P3d 371 (2019) (no evidence purported comparators were "similarly situated in any material sense, such as their job descriptions or qualifications" and therefore plaintiff could not show causation). Here, plaintiff purports to show different treatment of other employees by offering statements from two coworkers about alleged conduct of other employees, but there is no evidence to show that those employees were on a Last Chance Agreement, or that they were otherwise similarly situated to plaintiff in any material way. As defendant points out, plaintiff did not present evidence that (1) defendant knew about the alleged misconduct of the other employees; (2) that the employees engaging in that conduct were not actually disciplined; (3) that any of the employees, like plaintiff, were on a Last Chance Agreement; or (4) that the employees were disciplined for being insubordinate—the basis upon which plaintiff was ultimately terminated.

Plaintiff also asserts that the 13 months between his testimony and his termination raises an inference of causation that is sufficient to survive summary judgment. "Oregon case law has not identified how 'very close' in time the discriminatory treatment must follow the protected activity such that, by itself, the timing raises an issue of fact regarding causation." *See Meyer v. Oregon Lottery,* 292 Or App 647, 682, 426 P3d 89 (2018). However, while we have declined to adopt any particular temporal rule, we have previously concluded that a gap of 13 months between the plaintiff's protected activity and an alleged retaliatory termination, was "without more," insufficient to create an issue of fact on causation. *Brunick v. Clatsop County*, 204 Or App 326, 342, 129 P3d 738 (2006); *see also Boynton-Burns*, 197

Or App at 381 (noting that, "[i]f the plaintiff attempts to establish the causal connection indirectly, relying on mere temporal proximity between the events, the events must be 'very close' in time").

Further, plaintiff's argument for causation between his civil testimony and his employment termination ignores the fact that plaintiff was not working for defendant at the time of his testimony, and that defendant *rehired* plaintiff after his testimony and continued employing him for nearly a year. The only reasonable inference from defendant's decision to rehire plaintiff after his testimony is that it had no negative causal effect on his employment. Under those circumstances, a factfinder could not find the requisite causal link between plaintiff's termination and his protected conduct.

Thus, the record falls short for plaintiff at several crucial points. First, after plaintiff testified against defendant, defendant rehired plaintiff in the same position as he had before the testimony and continued to employ him for over a year. Second, plaintiff, after being rehired, committed two acts of insubordination before being placed on the Last Chance Agreement. Third, plaintiff violated his Last Chance Agreement by openly and knowingly defying his supervisor's instructions. In sum, plaintiff did not present evidence sufficient to create a genuine dispute that defendant terminated his employment because of his testimony more than a year earlier. The trial court accordingly did not err in granting defendant's motion for summary judgment.

Affirmed.